[S. F. No. 15135. In Bank.—July 17, 1934.]

EDWIN M. DAUGHERTY, as Commissioner of Corporations, etc., Petitioner, v. RAY L. RILEY, as Controller, etc., Respondent.

Charles F. Johnson for Petitioner.

U. S. Webb, Attorney-General, Robert W. Harrison, Chief Deputy Attorney-General, and W. R. Augustine, Deputy Attorney-General, for Respondent.

O'Melveny, Tuller & Myers, John A. Powell, Paul Fussell and Walter K. Tuller, as *Amici Curiae* on Behalf of Petitioner.

SHENK, J.—This is a proceeding in *mandamus* to compel the respondent, state controller, to audit and approve certain claims in favor of the division of corporations by resorting first to the corporation commission fund, then to the general fund in the state treasury, and for general relief. The return to the alternative writ is a general demurrer to the petition.

The budget enactment of 1933 (Stats. 1933, p. 814) provides: "Item 85: For the support of the division of corporations, department of investment, six hundred ninety-eight thousand, six hundred seventy-four and 16/100 dollars, payable from the corporation commission fund—$698,674.16." The average monthly budget authorization for the division of corporations for the current biennial period is $30,347.15.

The average monthly expenses of that division for the first eight months of the current biennial period have been $28,616.63. At the close of business on February 28, 1934, there remained in the corporation commission fund the sum of $11,160.20. The operating expenses of said department for that month were $25,476.74, of which amount $23,824.14 was pay-roll. On March 15, 1934, the date for the payment of salaries for the preceding calendar month in said department, pursuant to section 664a of the Political Code, there was on hand the sum of $15,647.12 and no more.

With the foregoing condition of the corporation commission fund in mind the director of finance, on March 13, 1934, issued his certificate of unavoidable necessity, purporting to act under section 5 of the 1933 budget enactment, which provides, so far as pertinent, as follows: "The officers of the various departments . . . are expressly forbidden to make any expenditure in excess of such appropriation, except the consent of the state department of finance be first obtained, and a certificate in writing, duly signed by the director of said department, of the unavoidable necessity of such expenditure; . . . "

The certificate of the director of finance recited that an extreme emergency had arisen in the administration of the division of corporations, in that the receipts of the corporation commission fund were insufficient to cover the necessary and vital operative expenses of said division; that the expenditures of the division for the current biennial period have not exceeded the limitation fixed by item 85 of the Budget Act of 1933; that the actual appropriation for said division is the amount represented by current fees deposited in the corporation commission fund, and the excess of said expenses for February, 1934, over the amount in said fund at the end of that month constitutes an expenditure in excess of the appropriation for said division; that on February 28, 1934, only $11,160 in the corporation commission fund against said operating expense in the sum of $25,476.74 for the month of February, 1934, is chargeable; that the nonpayment of said excess in the amount of $14,316.54 would result in seriously curtailing and crippling the operations of said division to the detriment of the public welfare; and that all of said expenditures arose and are vital and necessary to the proper functioning of said division. Following these recitals the director of finance certified to the unavoid-

able necessity of the above-mentioned expenditures in excess of the appropriation for the division of corporations "all as provided in section 5 of Chapter 278 of the Statutes of 1933".

Under date of March 20, 1934, the commissioner of corporations presented his claim and request to the respondent state controller for a transfer from the general fund or other appropriate fund of an amount in addition to the balance in the corporation commission fund sufficient to meet the pay-roll of the department for the month of February. The state controller refused to comply with the demand, stating that in his opinion the procedure proposed to be adopted was void and of no effect. The present proceeding was then commenced.

In order to determine whether the petitioner is entitled to any relief it is deemed necessary to consider the status of the corporation commission fund from the standpoint of its legislative history and administration and to review the events which have resulted in the present admittedly unfortunate and deplorable financial condition of the department. It is insisted and not disputed that unless some relief can be granted the functioning of the department will be seriously curtailed if not completely suspended.

The office of the commissioner of corporations was created by the Investment Companies Act of 1913. (Stats. 1913, p. 715.) This act was reframed and renamed the Corporation Securities Act in 1917. (Stats. 1917, p. 673.) The act was amended in some respects at succeeding sessions of the legislature, preserving, however, the material objects and purposes thereof, but imposing new and onerous duties and responsibilities and expenditures on the division of corporations. The laws now in force place upon the division the administration not only of the Corporate Securities Act but also of the Industrial Loan Act (Stats. 1917, p. 658); the Credit Unions Act (Stats. 1927, p. 51); the Personal Property Brokers Act (Stats. 1909, p. 969; Stats. 1933, p. 1496); the Bucket Shop Act (Stats. 1923, p. 449); the Community Land Chest Act (Stats. 1933, p. 1465), and the Supplement to the California Industrial Recovery Act (Stats. 1933, p. 2632).

It is unnecessary to set forth in this opinion the provisions of the foregoing acts by which succeeding legislatures

have imposed new duties and responsibilities upon the division of corporations. A reading of the several acts is a demonstration of the fact. Proceeding in the first instance on the theory of a check by the department on improvident transactions in certain lines of business, the functioning of the department has become an essential part of the transaction of businesses involving large corporate enterprises. The Corporate Securities Act alone provides in mandatory terms that permits be obtained and licenses issued before certain extensive corporate enterprises may be initiated or carried on. Financing and refinancing depend upon the authority first obtained from this department. If the department does not function a paralysis in the business life of the state depending upon its authority to proceed is the inevitable result.

As an indication of the strangulation of this department to the point where it must cease to function properly, the following facts appear without question: From its inception the sole support of the department has been and now is the revenue from fees for permits and licenses required by law to be issued as a prerequisite to the initiation or the carrying on of business. In times of business activity and prosperity these fees have been more in the aggregate than sufficient currently to support the department. In times of depression this revenue is correspondingly diminished. Prior to 1930 and during financially active years, the department built up a substantial reserve amounting to $752,563.82. No suggestion is made that the fees as fixed by statute, the payment of which resulted in this reserve, were unduly large, taking into consideration, necessarily, the fluctuations in financial transactions in cycles of years. This comfortable reserve was subjected to two legislative appropriation enactments. In 1929, when the surplus in the treasury of the state amounted to upwards of $25,000,000, the legislature adopted an act entitled, ''An Act making an appropriation for the construction and completion, equipment and furnishing of an addition to the state office building at San Francisco, California''. (Stats. 1929, p. 1683.) The amount of this appropriation was $330,000, and was made ''out of any money in the state treasury to the credit of the corporation commission fund''. In the body of the act it was provided that this addition to the state building at San

Francisco was "for the housing of the San Francisco offices of the commissioner of corporations", and it was also provided that "the director of finance may rent, lease, or allow the use of any portion of said addition, not needed for the use of the San Francisco office of the commissioner of corporations, to any of the agencies of the state government; rentals derived therefrom to be deposited in the corporation commission fund". These provisions of the act will be referred to later in this opinion.

In 1931 the legislature, despite the still existing large general fund surplus, passed an act approved February 3, 1931, and effective immediately, as follows: "Section 1. The sum of two hundred ten thousand dollars ($210,000), is hereby appropriated out of any money in the corporation commission fund in the state treasury, not otherwise appropriated, to meet a deficiency in the appropriation for the construction and completion, equipment and furnishing of an addition to the state office building at San Francisco, California. Sec. 2. Inasmuch as this act provides an appropriation for the usual current expenses of the state, it is hereby declared an emergency measure and shall, under the provisions of section 1 of article four of the Constitution, take effect immediately." (Stats. 1931, p. 51.) Of this appropriation the sum of $186,609.21 has been expended.

In 1933 the legislature repealed the act of 1929 above referred to which appropriated the sum of $330,000 from the corporation commission fund for the construction of the addition to the San Francisco state office building, and which provided for rentals therein for the benefit of the division of corporations. (Stats. 1933, p. 738.) This repealing statute was passed after said appropriation had been exhausted and no reason for its passage appears except to relieve the director of finance from the obligation to rent the excess space in said addition to other state agencies for the benefit of the corporation commission fund.

The result of the foregoing appropriations and legislative manipulations has been to skeletonize the division of corporations financially, at the same time leaving the extensive duties and responsibilities of that department otherwise unaffected.

It is the contention of the petitioner that the appropriation acts of 1929 and 1931 are unconstitutional. It is first necessary to examine into the nature of the corporation commission fund from which the appropriations were made. From the time of its creation the division of corporations was intended to be and has been a self-supporting state agency. The functions it performs under the authority of the Corporate Securities Act are to regulate, and thus to modify, limit and restrain individual freedom of action. The statute under which it operates is sustainable from a constitutional standpoint only as a justifiable exercise of the police power. (*Hall* v. *Geiger-Jones Co.*, 242 U. S. 539 [37 Sup. Ct. 217, 61 L. Ed. 480, Ann. Cas. 1917C, 643, L. R. A. 1917F, 514]; *Caldwell* v. *Sioux Falls Stock Yards Co.*, 242 U. S. 559 [37 Sup. Ct. 224, 61 L. Ed. 493].) Its general purpose was to protect the public not only against fraudulent or unlawful stock and investment schemes and enterprises, but also to regulate and control the issuance of securities offered to the public for purchase. (*Hayden Plan Co.* v. *Friedlander*, 97 Cal. App. 12 [275 Pac. 253].) The Corporate Securities Act is within that classification of laws passed for the protection of the public and the funds derived therefrom are for the purpose of paying the cost of regulation and are not for general tax or revenue purposes. (*Van Wyke* v. *Burrows*, 98 Cal. App. 415 [277 Pac. 190]; 6a Cal. Jur., p. 532.) Under section 20 of the act the fees charged and collected pursuant to the authority of the act are paid into the state treasury to the credit of the "corporation commission fund"; and under section 21 all moneys paid into that fund are paid by warrants drawn by or under the authority of the commissioner of corporations. Section 28 provides: "All moneys which shall be paid into the state treasury and credited to the 'corporation commission fund' are hereby appropriated to be used by the commissioner in carrying out this act." Although section 28 was amended in 1931 to include the language just quoted, such inclusion was but a re-enactment and continuation of the same provision in identical terms incorporated in section 21, in 1917, and which has at all times since the latter date been in force as a continuing appropriation for the support and maintenance of the corporation commissioner's department.

 In support of the contention that the act of 1929 was unconstitutional, it is pointed out that the appropriation therein made was for a capital expenditure, namely, for the construction or enlargement of a state office building, and therefore, it is asserted, was not a proper appropriation from the special fund of the corporation commissioner, but that such an appropriation should have been made from the general fund or other tax fund or some fund not specifically raised and especially set apart for purposes of regulation. If this be not so it is claimed that the enactment of the law imposing the regulatory fees has been and is in fact a special law for the assessment and collection of taxes in violation of the tenth subdivision of section 25 of article IV of the Constitution, and likewise double taxation and contrary to section 1 of article XIII of the Constitution which requires that all property in the state shall be taxed in proportion to its value.

The legislature in 1929 undoubtedly realized the legal obstacles in the way of taking these special funds for a capital expenditure unless it should be made to appear that the expenditure of the appropriation was in reality for the benefit of the corporation commissioner's department. It therefore provided in the appropriation measure that the fund was to be used "for the housing of the San Francisco offices of the commissioner of corporations", accompanied by the provision that the director of finance might rent any portion of the improvement to be constructed not needed by the commissioner's department, such rentals to be deposited in the corporation commission fund. No claim is made by the petitioner herein that the legislature was without power to use this special fund for the purpose of housing his department nor that one branch of his department is not in fact housed in the completed structure, but it is asserted that the facts existing at the time of the appropriation and subsequent events have proved the housing and rental provisions to have been a mere gesture. This claim is fortified by the fact that the space required for the San Francisco office of the commissioner is relatively small as compared with the whole improvement constructed; that the corporation commission fund has received no benefit from the rentals collected by the department of finance for space occupied by other departments other than credits

on rentals charged to the department of corporations for space in the Los Angeles and Sacramento state office buildings and janitor service in the San Francisco office, and that in 1933 the authorization for the collection of rentals for the benefit of the department was repealed by the act effective August 21, 1933. With the suspension of collection of rentals for the benefit of the petitioner's fund the records of the department of finance as of December 13, 1933, showed that the division of corporations was in debt to the general fund in the sum of $16,921.13 on account of charges made against it for rent and janitor service.

However, good faith on the part of the legislature in 1929 in making the appropriation from the corporation commission fund for the purpose of housing the department and the collection of rentals for its benefit for space in excess of the department's requirements must be assumed. It must also be assumed that the appropriation was so made in recognition of the special fund character of the revenues coming into the corporation commission fund. There was therefore no fatal infirmity in the appropriation of 1929. It is subsequent acts of the legislature and administrative departments in failing to safeguard the investment of this special fund for the benefit of the department of the collection of proper rentals that have been called into question. If the corporation commission fund is a special fund in the nature of a trust fund, a question which will hereinafter be discussed, good faith would also require that provision be made for the collection of rentals for space occupied by other departments, the same to be paid into the corporation commission fund. For present purposes we are content to hold that the Appropriation Act of 1929 was not unconstitutional. As to the subsequent management of the office space constructed thereby, enough has been said for present purposes.

The Appropriation Act of 1931 rests upon a different basis. This appropriation was an attempted direct withdrawal of $210,000 from the corporation commission fund to pay for the completion of the state office building at San Francisco, without restriction as to office space for housing the corporation commissioner's department or the collection of rental for the benefit of that department. The act directed that the appropriation be made "out of any money

in the corporation commission fund not otherwise appropriated" and declared the act an urgency measure "for the usual current expense of the state", and to take effect immediatcly.

The petitioner urges the same objections to the 1931 act as are lodged against the 1929 Appropriation Act, but with more convincing force, in connection with additional objections. The 1931 act has not the earmarks of an appropriation for the benefit of the division of corporations. It appears to be an appropriation for a capital expenditure chargeable only against the general fund or some other tax or general revenue fund. ▮ As has been seen the corporation commission fund is not such a fund. Its revenues are impositions for purposes of regulation only. When collected this revenue is permanently set apart under the continuing appropriation under section 28 of the Corporate Securities Act for the use of the department. In this respect the revenues are in the nature of a trust fund raised for a particular purpose in the exercise by the state of its police power. They are not state revenues in the sense that they may be used for any state purpose as long as the department is not in need of them, and the justification for their collection is to make the department self-supporting. (See *Riley* v. *Forbes,* 193 Cal. 740 [227 Pac. 768].) This fund is a special fund of the same nature as the railroad commission fund, created as a continuing appropriation under section 85 of the Public Utilities Act for the support of the railroad commission. (Stats. 1915, p. 169.) This continuing special appropriation fund was held not affected by the adoption of the budget amendment of the Constitution or the budget bill. (*Railroad Com.* v. *Riley,* 192 Cal. 55 [218 Pac. 415].) The same is true of the special fund created for the examination and certification of nurses (*Jamme* v. *Riley,* 192 Cal. 126 [218 Pac. 578]), the real estate commissioner's fund (*Keiser* v. *State Board of Control,* 192 Cal. 129 [218 Pac. 1016]), the fish and game commission fund (*Board of Fish & Game Com.* v. *Riley,* 194 Cal. 37 [227 Pac. 774]). Other similar special funds are the board of medical examiner's fund (Stats. 1913, p. 722); the state dentistry fund (Stats. 1915, p. 698); and the special funds in the state treasury of other self-supporting regulatory state agencies not necessary to men-

tion. That these special funds are raised for regulatory purposes and are set apart for the exclusive use of the state departments and agencies for which they are imposed and collected cannot be doubted. That these funds may not be permanently diverted from their specific purposes and to such an extent as to render the department or agency unable to function is likewise clear. This is especially true in the present case where the legislature has established elaborate governmental machinery the effective operation of which is essential to the transaction of business depending on its proper functioning. It would appear to be self-evident that the legislature may not on the one hand set up a department to authorize, regulate and supervise business transactions large and small, imposing fees upon those affected for the purpose of carrying out the purposes of the law, and on the other hand permanently divert the funds thus raised and constituting the life blood of the department to a general fund or other general tax purpose. The same rule does not of course apply to funds raised under the power of taxation.

 What has been said is not to deny power upon the part of the legislature to transfer a special fund reserve temporarily from one purpose to another under the authority of section 444 of the Political Code or other authority to like effect. But when these diversions are made the transfers are under the section deemed a loan from the special fund to be returned to that fund as soon as funds are available. This right of transfer established by said section 444 is specifically declared not to warrant the transfer of any money from any fund so as to interfere in any manner with the objects for which such fund was created.

There is statutory authority for impressing a trust or special fund character on the corporation commission fund. Section 453a of the Political Code provides in part as follows: "Whenever any statute provides for the payment of moneys into the state treasury which have been collected or received for specific purposes by any agency of the state, and no fund has been created in the state treasury to which said moneys are to be credited, then said moneys shall be credited to the 'special deposit fund' and the money shall be held subject to the right of the state agency to recover the same, on claims properly presented, for ful-

filling the purposes for which said moneys were so collected or received.''

But the Appropriation Act of 1931 did not purport to make the transfer as a loan, but it boldly took from the special fund the money necessary for the support and maintenance of the corporation commissioner's department with no provision for its repayment either out of any moneys in the general fund to be thereafter available or by repayment in the way of rentals charged to other departments, or otherwise. It is suggested by the respondent that ''what the legislature had the power to create, it had the power to destroy in whole or in part so long as it did not impair vested rights''. The argument seems to be that as the legislature created the corporation commission fund and provided for the regulatory fees to be paid into it for particular purposes, the legislature could also appropriate the money so raised to a foreign purpose because neither the petitioner nor the fee payers have a vested right in the sense that they may successfully insist that the fund be devoted to the purpose for which the money was paid into the state treasury. The conclusion does not necessarily follow from the premise. Assuming that the legislature has the power to pass laws the effect of which would be seriously to affect or practically to destroy the business and economic interests in the state, it must be said that laws having that effect, designed or not, must be within constitutional limitations. To hold that the legislature could provide fees for regulatory purposes under the police power and then devote the money so received to capital expenditures for a foreign purpose would be to declare that the legislature could thus raise money by a special tax in contravention of section 25 of article IV of the Constitution. This course of legislative conduct cannot be justified.

If it be urged that the Appropriation Act of 1931 should not be considered alone, but should be deemed but an additional appropriation for the same purpose indicated in the Appropriation Act of 1929, viz., the housing of the San Francisco offices of the division of corporations, and therefore valid, we are confronted with the further obstacle in the way of declaring the act of 1931 an effective appropriation. That act states that the appropriation therein provided for shall be out of the corporation com-

mission fund "not otherwise appropriated". As noted, all fees paid into the corporation commission fund are under section 28 of the Corporate Securities Act continually appropriated for the support and maintenance of the division of corporations. This provision was a valid appropriation of that fund for the purpose for which it was to be used and was in effect when the act of 1931 was adopted. Said section 28 is a specific continuing appropriation and the claims of the petitioner for the support of his department are the first charges against the fund (*Callaghan* v. *Boyse,* 17 Ariz. 433 [153 Pac. 773]); and an appropriation out of a fund "not otherwise appropriated" must be postponed to appropriations previously made out of that fund, and are thus subordinated to the prior appropriation. (*Klein* v. *Pipes, State Treasurer,* 43 La. Ann. 362 [8 So. 927]; 59 Cor. Jur. 231.) Since the entire corporation commission fund had been appropriated prior to the act of 1931 there was nothing in that fund upon which the latter act could operate.

Other points made by the petitioner attacking the act of 1931 as an emergency measure need not be passed upon in view of the conclusions reached on other phases of the controversy.

We therefore conclude: First, that the act of 1929 was valid when considered as an appropriation (a) for the purpose of construction of quarters adequate to house the San Francisco offices of the division of corporations and (b) as providing that the amount expended therefor in excess of that amount constituted a loan from the corporation commission fund to be repaid to that special fund if needed by the division of corporations, as soon as other state funds are available therefor, or as an investment in the improvement for the benefit of the special fund and to be protected by rentals or revenues otherwise provided. Second: That the act of 1931 was ineffectual as an appropriation measure either (a) because it was an outright diversion of a special or trust fund raised for regulatory purposes to a capital expenditure or general tax purpose with no provision for its return, or for safeguarding it as an investment on behalf of the special fund; or (b) because it was by the terms of the act itself postponed and subordinated to the prior and continuing appropriation for

the benefit of the division of corporations. In either or any event the amount expended under the purported authority of the 1931 act, to wit, the sum of $186,609.21, is in law still in the corporation commission fund.

■ The next question pertains to the appropriate remedy to be accorded the petitioner. Section 5 of the 1933 budget enactment, under which the director of finance proceeded with an evident purpose to assist in saving the division of corporations as an effective part of the state government, does not seem to fit the situation for the reason that the petitioner has not exceeded and does not intend to exceed the allotment to his department by the 1933 budget enactment. Nor has he exceeded, nor does he intent to exceed the amount which is in law now in the corporation commission fund under the continuing appropriation, and hence no violation of section 677a of the Political Code is contemplated. The petitioner is therefore entitled to an approval of his claim against his own department fund as supplemented to the extent to which it was depleted by the ineffectual Appropriation Act of 1931.

It is therefore ordered that the respondent retransfer from the general funds of the state to the corporation commission fund the sum of $186,609.21 and to audit and approve the demands of the petitioner for expenditures from that fund as supplemented by the amount so retransferred, or in the event that the general funds of the state be not available for such retransfer at this time then to credit the corporation commission fund with the amount hereby ordered retransferred and to draw his warrants upon the general fund in the state treasury sufficient to pay such claims of the corporation commissioner presented for the conduct of his department as are in excess of the amount otherwise in the corporation commission fund.

Let a peremptory writ issue accordingly.

Preston, J., Thompson, J., Curtis, J., and Waste, C. J., concurred.