BILL LOCKYER Attorney General, MARC J. NOLAN Deputy Attorney General.
THE CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM has requested an opinion on the following questions:
1. Where are federal Medicare Part D funds that have been paid out as a Retiree Drug Subsidy pursuant to the enrollment of state and contracting agency annuitants in a Medicare supplemental health plan administered by the California Public Employees' Retirement System to be deposited?
2. How are federal Medicare Part D funds that have been paid out as a Retiree Drug Subsidy pursuant to the enrollment of state and contracting agency annuitants in a Medicare supplemental health plan administered by the California Public Employees' Retirement System to be used?
3. Where are federal Medicare Part D funds that have been paid out pursuant to the enrollment of state and contracting agency annuitants in a Medicare Advantage Prescription Drug Plan administered by the California Public Employees' Retirement System to be deposited?
 CONCLUSIONS
1. Federal Medicare Part D funds that have been paid out as a Retiree Drug Subsidy pursuant to the enrollment of state and contracting agency annuitants in a Medicare supplemental health plan administered by the California Public Employees' Retirement System are to be deposited in the Public Employees' Contingency Reserve Fund.
2. Federal Medicare Part D funds that have been paid out as a Retiree Drug Subsidy pursuant to the enrollment of state and contracting agency annuitants in a Medicare supplemental health plan administered by the California Public Employees' Retirement System are to be used to offset increases in the plan's future health benefit premium rates, reduce annuitant and employer contributions to the plan, implement cost containment programs, or increase plan benefits, as determined by the Board of Administration of the California Public Employees' Retirement System.
3. Federal Medicare Part D funds that have been paid out pursuant to the enrollment of state and contracting agency annuitants in a Medicare Advantage Prescription Drug Plan administered by the California Public Employees' Retirement System are to be deposited with the organization providing the Medicare Advantage Prescription Drug Plan.
 ANALYSIS
On December 8, 2003, Congress enacted the Medicare Prescription Drug Improvement and Modernization Act. (Pub.L. No. 108-173;42 U.S.C. § 1395w-101-152.) Among other provisions, the federal legislation established a voluntary outpatient prescription drug benefit under a new Medicare Part D, effective January 1, 2006. (42 U.S.C. § 1395w-101(a)(2); 42 C.F.R. § 423.886(a)(2); see 70 Fed. Reg. 4194 (Jan. 28, 2005).) The Centers for Medicare and Medicaid Services (CMS) provide the Part D prescription drug benefits through various prescription drug plans (PDPs), Medicare Advantage prescription drug plans (MA-PDs), and employment-based "qualified retiree prescription drug plans." (42 U.S.C. §§ 1395w-101, 1395w-132; see 70 Fed. Reg. 4194 (Jan. 28, 2005).)[1]
CMS pays a subsidy directly to the PDPs and MA-PDs in the form of advance monthly payments, which are calculated in relation to a plan's cost of providing basic drug prescription coverage less the amount of monthly beneficiary premiums paid to the plan by the plan's enrollees. (42 C.F.R. §§ 423.258, 423.315(b).) With regard to employment-based qualified retiree drug prescription plans, CMS pays a 28 percent Retiree Drug Subsidy (RDS), based on each qualifying covered retiree's annual allowable prescription drug costs between $250 and $5,000, to entities that sponsor such plans. (42 U.S.C. §§ 1395w-132(a)(3);42 C.F.R. §§ 423.880(b), 423.886.)
The three questions presented for resolution concern federal funds paid out by CMS with respect to retired state and local public employees who have been enrolled in the prescription drug program by the California Public Employees' Retirement System (CalPERS). CalPERS is a unit of the State and Consumer Services Agency (Gov. Code, §20002),[2] and its Board of Administration (Board) is charged with administering the provisions of the Public Employees' Medical and Hospital Care Act (§§ 22750-22948; Act). Under the Act's provisions, state employees and annuitants are eligible to enroll in a Board-approved and administered health benefits plan. (§§ 22800, 22830.) A number of other public agencies, at present 1138 agencies, also contract with CalPERS to administer a Board-approved health plan for their annuitants. (§§ 22920, 22922.)
As a public employee pension and retirement system, CalPERS is subject to the requirements of article XVI, section 17, of the Constitution (seeWestly v. California Public Employees' Retirement System (2003)105 Cal.App.4th 1095, 1099-1102), which state in part:
 "Notwithstanding any other provisions of law or this Constitution to the contrary, the retirement board of a public pension or retirement system shall have plenary authority and fiduciary responsibility for investment of moneys and administration of the system, subject to all of the following:
 "(a) The retirement board of a public pension or retirement system shall have the sole and exclusive fiduciary responsibility over the assets of the public pension or retirement system. The retirement board shall also have sole and exclusive responsibility to administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries. The assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system.
 "(b) The members of the retirement board of a public pension or retirement system shall discharge their duties with respect to the system solely in the interest of, and for the exclusive purposes of providing benefits to, participants and their beneficiaries, minimizing employer contributions thereto, and defraying reasonable expenses of administering the system. A retirement board's duty to its participants and their beneficiaries shall take precedence over any other duty.
 " . . . .
 "(e) The retirement board of a public pension or retirement system, consistent with the exclusive fiduciary responsibilities vested in it, shall have the sole and exclusive power to provide for actuarial services in order to assure the competency of the assets of the public pension or retirement system.
 " . . . ."
With this federal and state law background in mind, we address each of the questions presented.
1. Deposit of Federal RDS funds
We are first asked where federal RDS funds that have been disbursed by CMS on the basis of state and contracting agency annuitants enrolled in a CalPERS Medicare supplemental health plan are to be deposited. We conclude that the proper depository is the Public Employees' Contingency Reserve Fund.
The federal legislation specifies that CMS is to pay RDS funds to the "sponsor" of a qualified retiree drug prescription plan. (42 U.S.C. § 1395w-132(a)(1); 42 C.F.R. § 423.886(a)(1).) With one addition, "sponsor" means the same as "plan sponsor" as that term is defined in section 3(16)(B) of the Employment Retirement Income Security Act of 1974 (ERISA). (42 U.S.C. § 1395w-132(c)(2); 42 C.F.R. § 423.882.)[3]
This section of ERISA defines "plan sponsor" as follows:
 "The term `plan sponsor' means (i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan." (21 U.S.C. § 1002(16)(B).)
With reference to part (iii) of the above definition, each CalPERS Medicare supplemental health benefits plan that qualifies for RDS funds was established and is maintained by the Board in conjunction with the various public employers who pay into the plan. (See §§ 22870, 22871, 22880, 22881, 22885, 22890, 22892, 22893, 22899, 22901; Valdes v.Cory (1983) 139 Cal.App.3d 773, 783-789; see also Board ofAdministration of the Public Employees' Retirement System v. Wilson
(1997) 52 Cal.App.4th 1109, 1132.) In so doing, the Board acts to fulfill its constitutional and statutory duty to provide for and manage a program of health benefits for covered annuitants, while minimizing the costs to the participating employers. (See Cal. Const., art. XVI, § 17, subds. (a), (b); §§ 22790, 22793, 22794, 22796, 22850, 22851, 22853, 22855, 22860, 22863, 22864, 22865, 22866, 22910.)
We believe that the Board meets the description of an "association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan" for purposes of part (iii) of the ERISA "plan sponsor" definition. Interpreting this statutory definition in a related context, the Fifth Circuit of Appeals concluded that the "plan sponsor" of a multi-employer group health plan is the entity that holds the contributing employer funds in trust for the purpose of providing health and welfare benefits to covered employees. (In re Appletree Markets, Inc. (5th Cir. 1994) 19 F.3d 969, 971-972.) The court specifically rejected the contention that an employer contributing to the health plan falls under the ERISA definition of "plan sponsor." (Id. at pp. 973-974.)
Here, the contributions that the state and other contracting agencies make to each RDS-eligible CalPERS Medicare supplemental health plan are held and administered by the Board in trust for the purpose of providing plan benefits to covered annuitants. (See Cal. Const., art. XVI, § 17, subd. (a) ["assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system"]; Valdez v. Cory, supra, 139 Cal.App.3d at p. 788;71 Ops.Cal.Atty.Gen. 81, 85-86 (1988).)
We note that federal law requires the sponsor of an RDS program to perform a number of administrative duties that CalPERS is in a unique position to undertake. The sponsor's application for RDS funds must contain, for example, extensive identifying information about each participating annuitant and any Medicare-eligible dependents. (42 C.F.R. § 423.884(c).) A plan sponsor must also (1) verify that the actuarial value of prescription drug coverage under the plan is at least equal to the actuarial value of standard prescription drug coverage under Medicare Part D, (2) disclose information regarding various forms of "creditable" prescription drug coverage, and (3) maintain such records as CMS may require for auditing purposes. (42 U.S.C. § 1395w-132(a)(2); see also 42 C.F.R. §§ 423.884(d) (e), 423.888(d).) The RDS payments are subject to year-end reconciliation, and only CalPERS, as opposed to any of the contributing employers, is in a position to calculate the allowable prescription drug costs required in the reconciliation process. (See 42 C.F.R. § 423.888(b).)
Neither the state nor the contracting agencies control the Board's decisions regarding whether or how to apply for the RDS funds. Instead, the Board has statutory authority to administer the provisions of the Act (§ 22790) and is further granted "all powers reasonably necessary to carry out the authority and responsibilities expressly granted or imposed [by the Act]" (§ 22794). The Supreme Court has determined that the Board acts as the agent not of the state but of the beneficiaries it serves. (Madden v. Kaiser Foundation Hosp. (1976) 17 Cal.3d 699,705-706, 709.) In addition, the Constitution provides that the Board's "duties to its participants and their beneficiaries shall take precedence over any other duty." (Cal. Const., art. XVI, § 17, subd. (b).)
Accordingly, we find that the Board is the "sponsor" under federal law and must hold the RDS funds in trust for the specific purpose of benefitting the drug prescription plan and its participants, including the contributing public agency employers. (See Cal. Const., art. XVI, § 17, subds. (a), (b); see also § 22910, subd. (b)(1) [Board may use funds held in reserve health benefits account to increase benefits, contain costs, and reduce contributions of participating employees, annuitants, and employers].) It is well established that the assets of a public employee trust may not be appropriated for general purposes. (Gillum v. Johnson (1936) 7 Cal.2d 744, 758; Daugherty v. Riley (1934)1 Cal.2d 298, 308; Valdes v. Cory, supra, 139 Cal.App.3d at p. 788.)
Into which specific account must the Board, as the sponsor of the benefits plan under federal law and with its constitutional and statutory duties under state law, deposit the RDS funds? First, we note that the portion of the RDS funds attributable to the participation of state annuitants may not be deposited in the state's General Fund since the federal funds, designated for a specific purpose, do not constitute "money belonging to the state" within the meaning of the applicable statutes governing deposits in the General Fund. (See §§ 16300, 16301;Riley v. Thompson (1924) 193 Cal. 773, 776-778 [pilot fees submitted to state Board of Pilot Commissioners are for specific purpose of funding board salaries and activities and not for deposit in the General Fund];Riley v. Forbes (1924) 193 Cal. 740, 744-748 [state Board of Accountancy fees charged to applicants are for specific purpose of supporting board activities rather than deposit in General Fund];19 Ops.Cal.Atty.Gen. 220, 221-222 (1952) [moneys collected from irrigation districts for purpose of funding investigations are in the nature of a special trust fund rather than moneys belonging to the state].)[4]
RDS funds are neither "received by the state" nor by a "state agency for expenditure by the state" within the meaning of the applicable statutes describing deposits in the state's Federal Trust Fund. (§§ 16362, 16363.) Nor may RDS funds held by the Board be placed in the state's Special Deposit Fund. That fund is to be credited "[w]henever any law provides for the payment of money into the treasury which has been collected for specific purposes by any State agency, and no fund has been created in the treasury to which it is to be credited. . . ." (§ 16372.) As discussed above, federal law provides that CMS pay the RDS to the sponsor of a multiple-employer plan, here the Board, not to participating employers such as the state or other agency-employers. Further, we find that there exists a specific fund in the treasury which may be credited with the RDS funds.
The appropriate fund, which CalPERS maintains in administering the Act, into which the Board may deposit the RDS moneys is the Public Employees' Contingency Reserve Fund. Section 22910 provides in part:
 "(a) There shall be maintained in the State Treasury the Public Employees' Contingency Reserve Fund. The board may invest funds in the Public Employees' Contingency Reserve Fund in accordance with the provisions of law governing its investment of the retirement fund.
 "(b)(1) An account shall be maintained within the Public Employees' Contingency Reserve Fund with respect to the health benefit plans the board has approved or that have entered into a contract with the board. The account shall be credited, from time to time and in amounts as determined by the board, with moneys contributed under section 22885 or 22901 to provide an adequate contingency reserve. The income derived from any dividends, rate adjustments, or other funds received from a health benefit plan shall be credited to the account. . . .
 "The account may be utilized to defray increases in future rates, to reduce the contributions of employees and annuitants and employers, to implement cost containment programs, or to increase the benefits provided by a health benefit plan, as determined by the board. . . ."[5]
Federal RDS funds that CalPERS receives from CMS are properly designated as "funds received from a health benefit plan" within the meaning of section 22910, subdivision (b)(1). The Act broadly defines a "health benefit plan" as "any program or entity that provides, arranges, pays for, or reimburses the cost of health benefits." (§ 22777.) Here, CMS constitutes an entity that provides, arranges, pays the costs for, or reimburses health benefits.
Therefore, in response to the first question, we conclude that federal Medicare Part D funds paid out as an RDS pursuant to the enrollment of state and contracting agency annuitants in a Medicare supplemental health plan administered by CalPERS are to be deposited in the Public Employees' Contingency Reserve Fund.
2. Use of RDS Funds
Next, we consider how federal RDS funds disbursed on the basis of state and contracting agency annuitants enrolled in the CalPERS Medicare supplemental health plan may be used. As indicated above, the funds are to be deposited under the terms of section 22910, subdivision (b)(1), which provide that the funds "may be utilized to defray increases in future health benefit premium rates, to reduce the contributions of employees and annuitants and employers, to implement cost containment programs, or to increase the benefits provided by a health benefit plan, as determined by the board."
As indicated above, Congress established the RDS program "to offer qualified retiree drug prescription plans financial assistance with a portion of their prescription drug costs." (70 Fed. Reg. 4476 (Jan. 28, 2005).) In keeping with this intent, the Board may expend the RDS funds for the purposes enumerated in section 22910, subdivision (b)(1), with respect to a health benefit plan that generates the RDS funds, but not, for example, health benefit plans that the Board sponsors or administers outside the RDS program.
Such dedicated use for the RDS funds is consistent with the Board's regulations specifying that funds derived from employer contributions to the health benefits account in the Public Employees' Contingency Reserve Fund are to be expended "to defray increases in future rates, to reduce the contributions of employees and annuitants and the employers, or to increase the benefits provided by any plan to the extent that amounts inthe Fund are derived from that plan, upon determination by the Board." (Cal. Code Regs., tit. 2, § 599.513, subd. (c), italics added.) The three enumerated uses to which the Board's regulation refers — defraying potential rate increases, reducing member and employer contributions, and increasing benefits — may reasonably be read to be plan-specific, as opposed to other statutorily permitted uses. The dedicated use of plan-specific RDS funds furthers the Board's constitutional mandate to maximize benefits to covered annuitants, minimize the costs to participating governmental employers, and assure the competency of system assets. (Cal. Const., art. XVI, § 17, subds. (a), (b), (e).)
Therefore, in response to the second question, we conclude that federal Medicare Part D funds that have been paid out as an RDS pursuant to the enrollment of state and contracting agency annuitants in a Medicare supplemental health plan administered by CalPERS are to be used to offset increases in the plan's future health benefit premium rates, reduce annuitant and employer contributions to the plan, implement cost containment programs, or increase benefits provided by the plan, as determined by the Board.[6]
3. Deposit of MA-PD Funds
Finally, we consider where federal Medicare Part D funds are to be deposited that have been paid out pursuant to the enrollment of CalPERS members into an MA-PD plan. We conclude that the federal funds must be deposited directly with the organization that provides the MA-PD plan.
As described above, the federal legislation requires CMS to pay PDPs and MA-PDs a direct subsidy in the form of advance monthly payments calculated in relation to such plan's cost of providing basic drug prescription coverage less the amount of monthly beneficiary premiums paid to the plan by the plan's enrollees. (42 U.S.C. § 1395w-115;42 C.F.R. §§ 423.315(b), 423.329(a).) The funds are not paid to CalPERS for its use and control, but rather go directly to the organization providing the MA-PD plan.
Accordingly, in response to the third question, we conclude that federal Medicare Part D funds that have been paid out pursuant to the enrollment of state and contracting agency annuitants in an MA-PD plan are to be deposited with the organization providing the MA-PD plan.
[1] "Employment based retiree health coverage" is defined as health insurance or other coverage of health care costs provided to Part D eligible individuals under a group plan based on their status as retired participants in such a plan. (42 U.S.C § 1395w-132(c)(1); see42 C.F.R. § 423.882.)
[2] All further references to the Government Code are by section number only.
[3] The one addition is "in the case of a plan maintained jointly by one employer and an employee organization and for which the employer is the primary source of financing, the term ['sponsor'] means the employer." (42 U.S.C. § 1395w-132(c)(2); 42 C.F.R. § 423.882.) That additional definition has no application to the CalPERS health plans at issue since they are multiple-employer plans.
[4] The congressional intent behind providing RDS funds to plan sponsors was to "offer qualified retiree prescription drug plans financial assistance with a portion of their prescription drug costs," which would thereby "help employers retain and enhance their prescription drug coverage so that the current erosion in coverage would plateau or even improve." (70 Fed. Reg. 4476 (Jan. 28, 2005).) Thus, while RDS funds are intended to benefit employers (as well as their retirees) in the specific sense of improving the prescription drug coverage that employment-based health plans provide, they are not intended to benefit employers in some more general sense. Much less are the RDS funds designed to benefit employers exclusively and without regard to the retirees whose prescription drug coverage Congress sought to enhance.
[5] The "moneys contributed under section 22885 or 22901" are state and contracting agency employer contributions to the account, respectively, in the amounts specified in the listed statutes. (See §§ 22885, 22901.)
[6] Item No. 1900-001-0942 of the Budget Act of 2006 (Stats. 2006, ch. 47) appropriates $489,000 to CalPERS to "implement the processing of Medicare Part D eligibility files, reconciliation files, and subsidy requests." It also directs that any RDS funds received by CalPERS "shall be deposited into the Special Deposit Fund and identified as Medicare Part D drug subsidy funds" and that, in large part, RDS funds attributable to state annuitants may not be "spent or transferred to other funds except upon appropriation by the Legislature." As for RDS funds attributable to local agency annuitants, it directs such funds to be distributed to the local agency employers. Consistent with our analysis of questions one and two, we find this budget act language to be contrary to both state and federal law.