The **PENNSYLVANIA FEDERATION OF DOG CLUBS, The Federated Humane Societies of Pennsylvania, and the Humane League of Lancaster County, Petitioners**

v.

**COMMONWEALTH of Pennsylvania, and The Office of the Budget of the Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 15, 2014.
Decided Nov. 19, 2014.

Robert B. Hoffman, Harrisburg, for petitioners.

Brian D. Zweiacher, Chief Counsel, Harrisburg, for respondents.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and ROBERT SIMPSON, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge COVEY.

The Commonwealth of Pennsylvania and The Office of the Budget of the Commonwealth of Pennsylvania (collectively, Commonwealth) move this Court for summary relief seeking to dismiss the above-captioned matter with prejudice and have judgment entered for the Commonwealth. On June 21, 2012, The Pennsylvania Federation of Dog Clubs, The Federated Humane Societies of Pennsylvania and the Humane League of Lancaster County (collectively, Petitioners) filed a Petition for Review in this Court's original jurisdiction in the nature of a Complaint for Declaratory Judgment and Injunctive Relief (Complaint) against the Commonwealth. On June 25, 2012, Petitioners filed an amended Complaint (Amended Complaint) against the Commonwealth.

On July 17, 2012, Petitioners and the Commonwealth filed a Joint Application to Stay Proceedings Pending Decision by the Pennsylvania Supreme Court in the *"MCARE Cases"* (Stay Application). By July 18, 2012 order, this Court granted the Stay Application and stayed the proceedings pending disposition of *Hospital &*

*Healthsystem Association of Pennsylvania v. Commonwealth,* 621 Pa. 260, 77 A.3d 587 (2013) (*MCARE Cases* ). On September 26, 2013, the Pennsylvania Supreme Court decided the *MCARE Cases* and, by October 4, 2013 order, this Court dissolved the stay. On April 24, 2014, the Commonwealth filed the Application for Summary Relief Under Pa.R.A.P. 1532(b) (Summary Application) currently before the Court.[1]

### Background

Section 1001(a) of the Dog Law [2] created the "Dog Law Restricted Account [ (DLRA) ]" wherein "[a]ll moneys paid into the State Treasury under the provisions of [the Dog Law] shall be paid[.]" 3 P.S. § 459–1001(a). "Moneys are appropriated from the [DLRA] to make payments to counties and incorporated humane society organizations for designated purposes." 7 Pa.Code § 23.1. In August 2009, the General Appropriation Act of 2009 (Act 2009–1A),[3] an interim appropriations bill to provide partial funding pending passage of a final appropriations bill, was signed into law. Section 1911 of Act 2009–1A directed that "[t]he sum of $4,000,000 shall be deposited from the [DLRA] to the General Fund.[4]" The final General Appropriation Act for 2009 (Act 2009–10A) [5] included the identical provision. Petitioners aver that they "had a vested right to have all of the funds paid in dog, kennel and dealer licensing fees used for specified purposes as per [Section] 1001 of the Dog Law[;]" and

that "Section 1911 of Acts 1–A and 10–A destroy the vested rights of Petitioners, including their individual members[.]" Amended Complaint, ¶¶ 46, 47.

In the *MCARE Cases,* similar to the instant case, health care provider trade associations and individual health care providers (petitioners) brought an action against the Commonwealth seeking a declaration that the Commonwealth's transfer of $100 million from the Medical Care Availability and Reduction of Error (MCARE) Fund to the General Fund was unlawful. The petitioners therein filed an application for summary relief which this Court granted. However, the Pennsylvania Supreme Court reversed this Court's decision and remanded the case. Specifically, after determining that the action was justiciable under the political question doctrine and ruling that the petitioners had standing to bring the action, our Supreme Court held "that the October 2009 amendment to the Fiscal Code transferring $100 million from the MCARE Fund to the General Fund implicated the [petitioners'] due process rights, but that the question of whether the legislation was finally unconstitutional requires further factual development." *MCARE Cases,* 77 A.3d at 606.

### Summary Application

In its Summary Application, the Commonwealth avers that Petitioners have no standing to bring or maintain the instant action; Petitioners' claim is barred by laches; Petitioners have failed to state a

---

1. Pa.R.A.P. 1532(b) provides: "At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear."

2. Act of December 7, 1982, P.L. 784, *as amended,* 3 P.S. §§ 459–101 through 459–1205.

3. Act of August 5, 2009, P.L. 607, No. 1A.

4. Section 302(8) of The Fiscal Code, requires: "All moneys received by the Treasury Department from the Department of Revenue, or from any other source, which are not by this act required to be credited to any other fund, shall be credited to the General Fund." 72 P.S. § 302(8).

5. Act of October 9, 2009, P.L. 537, No. 10A.

claim upon which relief can be granted; and Petitioners have no vested right or interest in the DLRA. Thus, the Commonwealth requests that its Summary Application be granted, the matter dismissed, and judgment entered in its favor.

Petitioners maintain that the *MCARE Cases* control the disposition of this case. Petitioners restate our Supreme Court's holding in the *MCARE Cases* as follows: "[M]onies in restricted accounts/special funds, collected under compulsion and with explicit statutory statement that they would be used for specified purposes, cannot be legislatively diverted on a retroactive basis so long as the purpose(s) for which the funds have been collected remains." Petitioners' Br. at 13. Petitioners assert that "[e]very element of that holding is met here[.]" *Id.*

### Standing

 In Pennsylvania, a party seeking judicial resolution of a controversy 'must establish as a threshold matter that he has standing to maintain the action.' *Fumo v. City of Philadelphia,* 601 Pa. 322, 972 A.2d 487, 496 (2009). Unlike the federal courts, which derive their standing requirements from Article III of the United States Constitution, standing for Pennsylvania litigants has been created judicially. *Id.* at 500 n. 5. 'The core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution to his challenge.' *Id.* (citing *Wm. Penn Parking Garage [v. City of Pittsburgh,* 464 Pa. 168], 346 A.2d [269,] 280–81 [ (1975) ] ).

An individual can demonstrate that he has been aggrieved if he can establish that he has a substantial, direct and immediate interest in the outcome of the litigation. A party has a substantial interest in the outcome of litigation if his interest surpasses that of all citizens in procuring obedience to the law. The interest is direct if there is a causal connection between the asserted violation and the harm complained of; it is immediate if that causal connection is not remote or speculative.

*Fumo,* 972 A.2d at 496 (internal citations and quotations omitted).

*Johnson v. Am. Standard,* 607 Pa. 492, 8 A.3d 318, 329 (2010) (citation omitted).

The Commonwealth first argues that Petitioners' interests are not substantial. The Commonwealth contends that Petitioners' interests herein are similar to the petitioners' interests in *Pittsburgh Palisades Park, LLC v. Commonwealth,* 585 Pa. 196, 888 A.2d 655 (2005), wherein the Pennsylvania Supreme Court determined that the petitioners' interest was not substantial because they did not have "any peculiar, individualized interest in the outcome of finding [the statute therein] to be unconstitutional that [was] greater than that of any other citizen." *Id.* at 660. Conversely, Petitioners maintain that their interests are more akin to the petitioners' interests in the *MCARE Cases,* wherein our Supreme Court ruled that the petitioners' interests were substantial because "[p]rior to the enactment of [the statute therein], the money in the MCARE Fund was legally dedicated for MCARE purposes only, *i.e.,* to satisfy judgments against [the petitioners]. [The petitioners'] interest in having that money used for such purposes clearly surpasses the common interest of all citizens in seeing that laws are obeyed." *MCARE Cases,* 77 A.3d at 599.

Initially, *Pittsburgh Palisades Park* is readily distinguishable from the instant case. In *Pittsburgh Palisades Park,* the

petitioners were applicants for slot machine gaming licenses contesting a statute requiring the Commonwealth to return license fees if changes were made to the Gaming Control Board within five years. The Pennsylvania Supreme Court found that the petitioners did not establish "any peculiar, individualized interest in the outcome of finding [the statute] to be unconstitutional that is greater than that of any other citizen[,]" because the petitioners did not yet have a gaming license, and changes were not yet made to the Gaming Control Board. *Id.* at 660.

■ In the instant action, the money in the DLRA is legally dedicated "to counties and **incorporated humane society organizations** for designated purposes." 7 Pa. Code § 23.1 (emphasis added). Specifically, Section 1001(b) of the DLRA provides:

As much as may be necessary of such moneys and interest in the [DLRA] are hereby appropriated to pay:

(1) all salaries of the employees of the department in administering their duties under this act;

(2) all expenses of the secretary and the department in administering their duties under this act;

(3) all payments of all allowable damage claims pursuant to sections 701, 701.1 and 706, and the maintenance of a $50,000 indemnity fund;

(4) **all payments to counties pursuant to section 1002(a) and (a.1)(3);**

(5) all payments from surplus moneys declared to be available by the secretary pursuant to section 1002(b);

(6) all payments for promotion and educational activities; and

(7) all training required under section 901.

3 P.S. § 459–1001(b) (emphasis added). Section 1002(a) of the DLRA states:

**Dog control facilities.**—Any county except counties of the first class, two or more counties which form a joint dog control agency **or any humane society or association for the prevention of cruelty to animals may submit requests for funding to establish and maintain dog control facilities or other functions of dog control within the county to complement the Commonwealth dog law enforcement program.** Any county or humane society or association for the prevention of cruelty to animals which receives funding under this section shall appoint one or more animal control officers who shall be subject to the training requirements under section 901(b.1) and (b.2). If a joint dog control agency is created, one of the counties shall act as a lead agency for the purposes of meeting the requirements of the program, including, but not limited to, recordkeeping, supervision of employees and other administrative duties as required by this act.

3 P.S. § 459–1002(a) (emphasis added). Further, Section 1002(b) of the DLRA establishes that:

The secretary may declare that there is a surplus of money in the [DLRA]. **The secretary may authorize additional payments to** the counties, except to counties of the first class, municipalities and to **humane societies or associations for the prevention of cruelty to animals from any amount declared to be surplus.** Such payments shall be based on the secretary's evaluation pursuant to rules and regulations promulgated under this act.

3 P.S. § 459–1002(b) (emphasis added). As Petitioners are humane societies or associations, their "interest in having that money used for such purposes clearly surpasses the common interest of all citizens in seeing that laws are obeyed." *MCARE*

*Cases,* 77 A.3d at 599. Accordingly, Petitioners' interests are substantial.

The Commonwealth next argues that Petitioners do not have a direct interest. Again, the Commonwealth relies on *Pittsburgh Palisades Park* to support its position. Specifically, the Commonwealth contends: "[T]he Supreme Court found that, when the petitioners challenged the refund provisions, they failed to show that any harm resulted from the challenged provisions and that, therefore, they had no direct interest in the matter." Commonwealth Br. at 18. Petitioners rejoin that the fund diversion has eliminated or reduced the availability of grants to humane societies, thus they have a direct interest.

The *Pittsburgh Palisades Park* Court ruled that the petitioners did not have a direct interest because "rather than disadvantaging [the p]etitioners, it would appear that the legislation at issue would only benefit them if they succeed in obtaining a gaming license in that they would receive their fee in return for any future change in legislation regarding the Gaming Board." *Id.* at 660. Here, however, a review of Sections 1001(b), 1002(a) and 1002(b) of the DLRA, clearly shows the extent to which Petitioners are disadvantaged by the diversion of funds from the DLRA, i.e., less money to distribute pursuant to the statute. Consequently, *Pittsburgh Palisades Park* is inapposite, and the Commonwealth's argument fails.

Finally, the Commonwealth asserts that Petitioners do not have an immediate interest because they "have nothing to gain or lose from the outcome of this case, making their interest remote and speculative." Commonwealth Br. at 24. Specifically, the Commonwealth avers that because Section 1002(b) of the DLRA states

that "[t]he secretary **may** authorize additional payments . . . to humane societies or associations for the prevention of cruelty to animals from any amount **declared to be surplus**[,]" Petitioners' interest is remote and speculative. 3 P.S. § 459–1002(b) (emphasis added). Petitioners respond that the humane societies seek to gain a reinstatement of the grants they routinely received prior to the diversion of the funds, and all Petitioners seek to gain improved care and services provided to and on behalf of dogs, through a return to pre-diversion levels in staffing and operation of the Dog Law office. The diversion of funds has a direct impact upon the Dog Law Office's operations; thus Petitioners have an immediate interest.

Prior to the enactment of Act 1A and 10A, the money in the DLRA was legally dedicated for Dog Law purposes. Petitioners' interest in having that money used for those purposes surpasses the common interests to all citizens in seeing that all laws are obeyed. In addition, the transfer of the funds is the direct and immediate cause of the reduction in the grants received by the humane societies as well as the reduction in staffing and operations of the Dog Law office.[6] Accordingly, we conclude that Petitioners have satisfied all three prongs of the standing test enumerated in *Johnson* and hold that Petitioners are aggrieved, and therefore have standing to maintain this action.

■■ Alternatively, as argued by Petitioners, if they could not meet the traditional standing requirements, they could meet the less stringent requirements for taxpayer standing. As explained by our Supreme Court, the taxpayer standing requirements are as follows:

6. Because this is a motion for summary relief, "all of the opposing party's allegations are viewed as true[.]" *Commonwealth v. Ortho-*

*McNeil–Janssen Pharm., Inc.,* 52 A.3d 498, 504 (Pa.Cmwlth.2012).

(1) the governmental action would otherwise go unchallenged;

(2) those directly and immediately affected by the complained of matter are beneficially affected and not inclined to challenge the action;[7]

(3) judicial relief is appropriate;

(4) redress through other channels is unavailable; and

(5) no other persons are better situated to assert the claim.

*Pittsburgh Palisades Park*, 888 A.2d at 662 (quoting *Consumer Party of Pa. v. Commonwealth*, 510 Pa. 158, 507 A.2d 323, 329 (1986), *overruled on other grounds*, *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 877 A.2d 383, 408 (2005)). Here, if Petitioners were not granted standing, the diversion would go unchallenged as evidenced by the fact that no other legal action has been filed. In addition, because dogs are the primary beneficiary of the DLRA, no other persons are better situated than Petitioners to assert the claim. Moreover, judicial relief is appropriate because assessing the constitutionality of a statute is a judicial duty. Finally, the Commonwealth has presented no other reasonably available channels to challenge the fund transfer and none appear apparent, thus redress through other channels is unavailable. Accordingly, under either analysis, Petitioners have standing to maintain this action.

### Laches

 Laches bars relief when the plaintiff's lack of due diligence in failing to timely institute an action results in prejudice to another. Because it is an affirmative defense, the burden of proof is on the defendant or respondent to demonstrate unreasonable delay and prejudice. Thus, '[t]he party asserting laches as a defense must present evidence demonstrating prejudice from a lapse of time ... [such as] that a witness has died or become unavailable, that substantiating records were lost, or that the defendant has changed [her] position in anticipation [that] the opposing party has waived his claims.' [*Commonwealth ex rel. Baldwin v.*] *Richard* [561 Pa. 489], 751 A.2d [647,] 651 [ (2000) (*Richard*)]. Furthermore, '[t]he question of laches is factual and is determined by examining the circumstances of each case.' *Weinberg* [*v. State Bd. of Exam'rs of Pub. Accountants*, 509 Pa. 143], 501 A.2d [239,] 242 [ (1985) ] (quoting *Leedom v. Thomas*, 473 Pa. 193, 373 A.2d 1329, 1332 (1977)).

*Commonwealth ex rel. Pa. Attorney Gen. Corbett v. Griffin*, 596 Pa. 549, 946 A.2d 668, 676–77 (2008) (citation omitted).

 The Commonwealth argues that Petitioners' claim is barred by laches since the funds were transferred no later than June of 2010, and Petitioners did not file their Complaint until June 25, 2012, prejudicing the Commonwealth in that "compliance with Petitioners' requested relief would be **extremely burdensome** because the funds are no longer available to be retransferred from the General Fund to the DLRA." Commonwealth Br. at 41 (emphasis added). Petitioners rejoin that "[e]ven if compliance with a court order [is] 'extremely burdensome,' that is quite different than the kind of prejudice required to successfully invoke laches." Petitioners' Br. at 47.

A review of the record indicates that the Commonwealth has failed to identify any

---

7. Despite Petitioners' contention that they are most directly and immediately affected by the diversion, given that the funds were diverted to the General Fund no others would be directly and immediately affected, especially those who would benefit from said diversion.

prejudice sustained as a result of the delay. Here, $4,000,000 was transferred from the DLRA into the General Fund and the Commonwealth is claiming that because the transfer has already been effectuated, Petitioners are barred by laches. However, in the *MCARE Cases,* wherein, the amount diverted into the General Fund was $100,000,000, and the petitioners requested injunctive relief to prevent the transfer, "[t]he Commonwealth suggested . . . that it could 'make [the petitioners] whole' by depositing $100 million back into the MCARE Fund in the event of an adverse judgment." *MCARE Cases,* 77 A.3d at 593. (That case is still pending remand in the Commonwealth Court.) Clearly, if the Commonwealth can deposit $100,000,000 back into the MCARE Fund, it can deposit $4,000,000 back into the DLRA. Accordingly, as the Commonwealth has not "present[ed] evidence demonstrating prejudice from a lapse of time[,]" laches does not apply. *Griffin,* 946 A.2d at 677 (quoting *Richard,* 751 A.2d at 651).

## Failure to State a Claim Upon Which Relief can be Granted

■ The Commonwealth argues that Petitioners' request to "enjoin [the Commonwealth, and] to take all steps necessary to remediate the unlawful actions taken, including restoring the diverted funds, with interest" is in essence a writ of mandamus, and thus is barred by sovereign immunity. Commonwealth Br. at 35 (quoting Amended Complaint at 13–14). The Commonwealth has no power under the Pennsylvania Constitution to enact legislation to reverse Section 1911 of Acts 1A and 10A, thus the Court cannot grant the relief requested. The Commonwealth cites *Sears v. Corbett,* 49 A.3d 463 (Pa. Cmwlth.2012) to support its position.

Petitioners respond that their Amended Complaint seeks a declaration that the fund diversion was illegal, and that the *Sears* Court affirmed that this type of claim raises no sovereign immunity concerns. Petitioners further note that in its laches argument, the Commonwealth never raised the fact that because of the delay the funds were already diverted thus triggering the sovereign immunity defense. Rather, the Commonwealth only argued that it would be "extremely burdensome" to re-transfer the funds from the General Fund to the DLRA. Further, in the *MCARE Cases,* the Commonwealth was "judicially estopped from making th[e] argument" that it "cannot comply with any remedy requiring such a monetary transfer" because "it prevailed on an opposite contention when opposing [the petitioners'] request for a preliminary injunction." *MCARE Cases,* 77 A.3d at 596 n. 9.

■ "[S]overeign immunity **does not bar a declaratory judgment action** or injunction seeking to prohibit state parties from acting, it does [however] apply to an action seeking to compel state parties to act or seeking to obtain money damages or recover property from the Commonwealth." *Sears,* 49 A.3d at 471 (emphasis added) (citing *Finn v. Rendell,* 990 A.2d 100 (Pa.Cmwlth.2010)). Consequently, notwithstanding that Petitioners may be barred from injunctive relief because of sovereign immunity, they are permitted to seek declaratory relief and thus, their Amended Complaint cannot be dismissed on this basis.

## No Vested Right

■ "[D]ue process norms limit the government's ability to extinguish vested rights (or entitlements) through retroactive legislation." *MCARE Cases,* 77 A.3d at 603. A vested right "must be something more than a mere expectation, based upon an anticipated continuance of existing law. It must have become a title, legal or

equitable, to the present or future enforcement of a demand, or a legal exemption from a demand made by another." *Konidaris v. Portnoff Law Assocs., Ltd.*, 598 Pa. 55, 953 A.2d 1231, 1242 (2008) (quoting *Lewis v. Pa. R. Co.*, 220 Pa. 317, 69 A. 821, 823 (1908)).

In the *MCARE Cases*, our Supreme Court described in detail why the petitioners had a vested right in the funds at issue.

The MCARE Act is unusual in that it amounts to something very similar to a government-run supplemental insurance program. It was enacted to abate a malpractice insurance exigency serious enough to require legislative intervention.

As such, MCARE comprises social legislation specifically designed (among other things) to ensure that Pennsylvania citizens have access to the care they need by incentivizing health care professionals to stay in Pennsylvania, or move to Pennsylvania, and fulfill those needs. To this end, **MCARE conditions a medical provider's ability to practice in Pennsylvania on participation in the MCARE Fund,** which entails the payment of substantial monetary assessments within a statutory scheme that mandates that **all such assessments be used to satisfy claims against the providers.** This latter condition is the linchpin to having the system work as intended. The assessment program was never intended as a general mechanism to raise tax revenue and, furthermore, there is a rational relationship between the monies paid in and their mandated use under Section 712(a) so as to prevent the condition-of-doing-business aspect of MCARE from having extortive overtones.

. . . .

This state of affairs elevated MCARE Fund monies above the status of standard budgeting allocations that all affected parties understand may be altered at will by the Legislature. Instead, the Legislature effectively said to the providers, **'you *must* supply these funds, and they will be used to satisfy judgments against you.'** That being the case, we conclude that the **MCARE Fund, although labeled a 'special fund,' is in the nature of a trust fund whose monies are held for the purpose designated by statute.** Since that purpose involved satisfying judgments against the health care providers, such **providers retained a vested entitlement** under the Due Process Clause to have the money utilized in the manner directed by statute. *See Daugherty v. Riley*, 1 Cal.2d 298, 34 P.2d 1005, 1010 (1934) (reaching a similar conclusion with regard to a 'special fund' set aside for exclusive use by a state commission on corporations). Since that purpose involved satisfying judgments against the health care providers, such providers retained a vested entitlement under the Due Process Clause to have the money utilized in the manner directed by statute. *See generally Konidaris v. Portnoff Law Assocs.*, 598 Pa. 55, 953 A.2d 1231, 1242 (2008) (explaining that a "vested" right is one that **rises above the level of a 'mere expectation'** that existing law will continue in place).

*MCARE Cases*, 77 A.3d at 603–04 (citations and footnotes omitted; emphasis added).

The Commonwealth argues that Petitioners do not have legal or equitable title in the DLRA funds. Specifically, the Commonwealth contends that Petitioners, unlike the petitioners in the *MCARE*

*Cases,* did not pay into the DLRA for the purpose of satisfying judgments against them and thus, cannot maintain an interest in the funds. Petitioners retort that it is irrelevant that they have not paid money into the DLRA that would be used to satisfy judgments against them. Petitioners maintain that they pay into the fund through dog, kennel and dealer licensing fees, and receive grants and care and services provided to and on behalf of dogs, thus, they "retain[ ] a vested entitlement ... to have the money utilized in the manner directed by statute." *Id.*

 The dispositive factor is not that the funds be used to satisfy judgments against the payor of the funds but, rather, that the DLRA be **obligated** to use the funds for Petitioners' specified purpose. In the instant case, any humane society or association for the prevention of cruelty to animals **may submit requests** for funding, however, said funding is not guaranteed. Even the additional monies Petitioners receive are only possible through **surplus monies.** Again, the DLRA does not mandate that grants be furnished. Petitioners have no rights that rise above the level of a mere expectation that the DLRA will continue in place.[8] For these reasons, we hold that Petitioners do not "retain[ ] a vested entitlement under the Due Process Clause to have the money utilized in the manner directed by statute." *Id.* As Petitioners have no vested right in the DLRA funds, this Court cannot declare that Section 1911 of Acts 1A and 10A violate Article 1, Section 1 of the Pennsylvania Constitution and/or the Fourteenth Amendment to the United States Constitution by extinguishing Petitioners' vested rights and/or is an illegal taking of Petitioners' members' property.

8. "[C]ourts have recognized that legislative bodies retain authority to control the fate of special funds in order to serve the changing

Accordingly, the Commonwealth's Application for Summary Relief Under Pa. R.A.P. 1532(b) is granted, Petitioners' Amended Complaint is dismissed with prejudice and judgment is entered in the Commonwealth's favor.

## *ORDER*

AND NOW, this 19th day of November, 2014, the Commonwealth of Pennsylvania and The Office of the Budget of the Commonwealth of Pennsylvania's (collectively, Commonwealth) Application for Summary Relief Under Pa.R.A.P. 1532(b) is GRANTED. The Pennsylvania Federation of Dog Clubs, The Federated Humane Societies of Pennsylvania and the Humane League of Lancaster County's Amended Petition for Review in the nature of a Complaint for Declaratory Judgment and Injunctive Relief against the Commonwealth is DISMISSED with prejudice and judgment is entered in the Commonwealth's favor.

needs of the government." *MCARE Cases,* 77 A.3d at 604.