# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Phantom Fireworks Showrooms, LLC, :
Sky King Fireworks of Easton, Inc., :
Sky King Fireworks of Erie, Inc., :
Sky King Fireworks of Morrisville, :
Inc., Sky King Fireworks of Tioga, :
LLC, CRJ Enterprises, LLC, :
                 Petitioners :
                          :
            v. : No. 21 M.D. 2018
                          : Argued: September 13, 2018
Tom Wolf, Governor of the :
Commonwealth of Pennsylvania, :
Russell C. Redding, Secretary of the :
Pennsylvania Department of :
Agriculture, C. Daniel :
Hassel, Secretary of the Pennsylvania :
Department of Revenue, Joseph B. :
Scarnati, III, Pro Tempore of the :
Senate of Pennsylvania, Mike Turzai, :
Speaker of the Pennsylvania House of :
Representatives, :
                 Respondents :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ROBERT SIMPSON, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge

**OPINION**
**BY JUDGE SIMPSON**            **FILED: December 4, 2018**

       Before this Court, in our original jurisdiction, is a petition for review challenging the constitutionality of the Act of October 30, 2017, P.L. 672, No. 43 (Act 43).

Petitioners are Phantom Fireworks Showrooms, LLC; Sky King Fireworks of Easton, Inc.; Sky King Fireworks of Erie, Inc.; Sky King Fireworks of Morrisville, Inc.; Sky King Fireworks of Tioga, LLC; and CRJ Enterprises, LLC (collectively, Phantom Fireworks).

Respondents are Tom Wolf, Governor of Pennsylvania (Governor Wolf), Russell C. Redding, Secretary of the Pennsylvania Department of Agriculture (Secretary Redding), and C. Daniel Hassell, Secretary of the Pennsylvania Department of Revenue (Secretary Hassell)[1] (collectively, Executive Respondents); Joseph B. Scarnati, III, President Pro Tempore of the Senate of Pennsylvania (Senator Scarnati); and Mike Turzai, Speaker of the Pennsylvania House of Representatives (Speaker Turzai).

Executive Respondents jointly and Senator Scarnati and Speaker Turzai separately filed preliminary objections to the petition for review. Phantom Fireworks opposed the preliminary objections and filed an application for summary relief concerning its constitutional challenges, which all Respondents oppose. Both the preliminary objections and the application for summary relief have been briefed and argued. They are now before us for disposition.

## I. Background

Act 43 originated as House Bill (HB) 542, Printer's Number (PN) 568 of 2017. The short bill read in its entirety:

---

[1] The case caption incorrectly lists Secretary Hassell as C. Daniel Hassel.

AN ACT

Amending the act of March 4, 1971 (P.L. 6, No. 2), entitled 'An act relating to tax reform and State taxation by codifying and enumerating certain subjects of taxation and imposing taxes thereon; providing procedures for the payment, collection, administration and enforcement thereof; providing for tax credits in certain cases; conferring powers and imposing duties upon the Department of Revenue, certain employers, fiduciaries, individuals, persons, corporations and other entities; prescribing crimes, offenses and penalties,' in sales and use tax, providing for remote sales tax notice.

The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

Section 1.  The act of March 4, 1971 (P.L. 6, No. 2), known as the Tax Reform Code of 1971, is amended by adding a section to read:

Section 279.  Remote Sales Tax Notice. -- (a)  A seller in this Commonwealth or remote seller shall conspicuously provide the following notice to a purchaser in this Commonwealth upon each separate sale at retail of tangible personal property or services via an Internet website operated by the seller or remote seller:

'Unless you paid Pennsylvania sales tax on this purchase, you may owe a Pennsylvania use tax on this purchase based on the total sales price of the purchase in accordance with the act of March 4, 1971 (P.L. 6, No. 2), known as the Tax Reform Code of 1971. Visit www.revenue.state.pa.us for more information.  If you owe a Pennsylvania use tax on this purchase, you must report and remit the tax on your Pennsylvania income tax form.'

(b)  The department shall impose a fine of not less than five dollars ($5) on a seller or remote seller for each

sale in which the seller or remote seller is in violation of this section.

(c)  This section shall apply to sales made on or after the effective date of this section.
Section 2.  This act shall take effect in 60 days.

HB 542, PN 568.


HB 542 was amended several times.  In its final form, enacted as Act 43, it contains voluminous additions concerning revenue issues beyond sales tax issues.[2]  Relevant here, Article XXIV of Act 43 adds a new chapter to the Tax Reform Code,[3] relocating and modifying the provisions of the Fireworks Law.[4]  The modifications include expansion of permissible fireworks sales to consumers, imposition of a 12% tax (including the 6% sales tax) on those sales, and permitting peak season sales of fireworks in tents and other temporary structures.  Act 43 repeals the entire former Fireworks Law.


Among its provisions concerning fireworks sales in temporary structures, Act 43 provides that sales in temporary structures are governed by the safety standards in "NFPA 1124," defined as Standard 1124 in the 2006 edition of the National Fire Protection Association (NFPA) CODE FOR THE MANUFACTURE, TRANSPORTATION, AND STORAGE OF FIREWORKS AND PYROTECHNIC ARTICLES

---

[2] For example, Act 43 as enacted includes a section concerning tobacco settlement funds received by the Commonwealth.

[3] Act of March 4, 1971, P.L. 6, as amended, 72 P.S. §§9401-9416.

[4] The former law was Act of May 15, 1939, P.L. 134, as amended, 35 P.S. §§1271-1278.

4

(Code) "or any subsequent edition" of that Code. Pet. for Review, Ex. A at 33. This definition is significant to our reasoning below.

Phantom Fireworks asserts, and Respondents do not dispute, that NFPA 1124 has been amended in subsequent editions of the NFPA Code. According to Phantom Fireworks,[5] in the 2013 edition, NFPA Code 1124 was similar to the 2006 edition. However, the NFPA withdrew NFPA Code 1124 in 2014. The current edition of the NFPA Code, published in 2017, contains <u>no</u> safety standards for retail sales of consumer fireworks.

In the course of the various amendments to HB 542, its title also expanded substantially. In its final form, the title included the phrase "providing for fireworks," referring to Article XXIV of Act 43, titled simply "Fireworks." Pet. for Review, Ex. A at 2, 32.

## II. Issues

Phantom Fireworks contends Act 43 violates the following several provisions of the Pennsylvania Constitution. Adding the provisions of the Fireworks Law, including its safety provisions, to the text of Act 43 violates the original purpose rule of Article III, Section 1. Similarly, by including provisions governing sundry subjects in addition to the original tax provision, Act 43 violates the single subject requirement of Article III, Section 3. By burying a short descriptor, "providing for fireworks," in its lengthy title, Act 43 also violates Article III, Section 3's requirement that a bill's title contain a clear expression of its subject matter.

---

[5] We recite the amendments as represented by Phantom Fireworks for background purposes only.

5

Further, by failing to set forth the entire text of the repealed Fireworks Law, Act 43 violates the repealed text publication requirement in Article III, Section 6. In addition, by providing that sales in temporary structures will be governed by NFPA standards in the 2006 or any subsequent edition, Act 43 impermissibly delegates legislative authority in violation of Article II, Section 1.

There is considerable overlap in the preliminary objections filed by the Executive Respondents, Senator Scarnati, and Speaker Turzai. The various preliminary objections allege failure to join the Commonwealth and the Attorney General as indispensable parties, lack of standing, improper inclusion of the Executive Respondents as parties, non-ripeness of Phantom Fireworks' claims, improper pleading of a request for relief as a separate count of the petition, and sovereign immunity of Executive Respondents.

Phantom Fireworks argues its claims present questions of law appropriate for resolution by summary relief. Respondents disagree that Phantom Fireworks is entitled to any relief, but they do not contend that summary disposition of the issues is inappropriate. In fact, Senator Scarnati asserts a counter-request for summary relief, seeking dismissal of all counts of the petition for review.

There is substantial overlap in the parties' briefing of issues relating to the preliminary objections and the request for summary relief. Accordingly, we dispose of all issues, including the preliminary objections, the request for summary relief, and the counter-application for summary relief, in a single decision.

### III. Preliminary Objections[6]
### A. Proper Parties
### 1. Nonjoinder of Indispensable Parties

A party is indispensable when its rights are so connected with the claims of the litigants that no relief can be granted without infringing on those rights. Pa. State Educ. Ass'n v. Pa. Dep't of Educ., 516 A.2d 1308 (Pa. Cmwlth. 1986) (citing Piper Aircraft Corp. v. Ins. Co. of N. Am., 417 A.2d 283 (Pa. Cmwlth. 1980)). Section 7540 of the Declaratory Judgments Act, 42 Pa. C.S. §7540(a), defines an indispensable party as any person who has or claims "any interest which would be affected by the declaration." Id. A Commonwealth agency whose interest will be affected by a declaration sought against another is an indispensable party. Pa. State Educ. Ass'n (citing Piper; Pleasant Twp. v. Erie Ins. Exch., 348 A.2d 477 (Pa. Cmwlth. 1975)).

Here, Senator Scarnati argues that both the Commonwealth and the Attorney General are indispensable parties whose nonjoinder deprives this Court of original jurisdiction. We disagree.

Both Pa. R.C.P. No. 235 and Pa. R.A.P. 521 state clearly that while a party challenging the constitutionality of a statute must notify the Attorney General of the challenge, the Attorney General may, but need not, intervene in order to be heard on the issue of constitutionality. See MCT Transp. v. Phila. Parking Auth., 60

---

[6] In ruling on preliminary objections, this Court accepts as true all well-pleaded allegations of material fact and all inferences reasonably deducible from those facts. Key v. Dep't of Corr., 185 A.3d 421 (Pa. Cmwlth. 2018). However, we need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. Id. For this Court to sustain preliminary objections, it must appear with certainty that the law will permit no recovery. Id. We resolve any doubt in favor of the non-moving party. Id.

A.3d 899 (Pa. Cmwlth.) (en banc), aff'd, 81 A.3d 813 (Pa. 2013), aff'd sub nom. MCT Transp. Inc. v. Phila. Parking Auth., 83 A.3d 85 (Pa. 2013) (Attorney General was not indispensable party in constitutional challenge where he received notice of petition for review and chose not to represent the Commonwealth). Moreover, if the Attorney General files a brief on the constitutional issue, the Commonwealth will thereafter be deemed an intervening party. If the Attorney General were an indispensable party, there would be no need either for intervention or for rules allowing the Attorney General to be heard without deciding to intervene. Similarly, if the Commonwealth were an indispensable party, there would be no need for a provision deeming the Commonwealth a party upon the Attorney General's decision to intervene.

As support for his argument, Senator Scarnati cites City of Philadelphia v. Commonwealth, 838 A.2d 566 (Pa. 2003) (Phila. I). Like this case, Phila. I concerned Article III constitutional challenges to the validity of a statute. However, "'the mere fact that a challenged statute may be declared unconstitutional does not, of itself, make the Commonwealth an indispensable party.'" Ballroom, LLC v. Commonwealth, 984 A.2d 582, 589 (Pa. Cmwlth. 2009) (quoting Pa. Sch. Bds. Ass'n v. Commonwealth Ass'n of Sch. Adm'rs., Teamsters Local 502, 696 A.2d 856, 867 (Pa. Cmwlth. 1997)).

Contrary to Senator Scarnati's representation, Phila. I does not stand for the proposition that the Attorney General is an indispensable party in an action challenging the constitutionality of a statute. To the contrary, although the Governor and the Secretary of the Commonwealth were parties in Phila. I, the Attorney

8

General was not a named party, and our Supreme Court expressly held that no other parties needed to be joined beyond those already participating in the action. Phila I. Moreover, although the Court observed that the Commonwealth was a named party, it did not hold that the Commonwealth was an indispensable party.

We conclude that neither the Commonwealth nor the Attorney General is an indispensable party. We overrule Senator Scarnati's preliminary objection in that regard.

## 2. Standing

Senator Scarnati asserts Phantom Fireworks lacks capacity to sue because it lacks standing to bring this action. Standing, a prerequisite to bringing a civil action, is a question of law. Fumo v. City of Phila., 972 A.2d 487 (Pa. 2009). Phantom Fireworks argues it has standing under both the traditional legal analysis and the limited exception to the general rule denying taxpayer standing to challenge the constitutionality of a statute. We agree.[7]

### a. Traditional Standing Analysis

The concept of standing mandates that the party must have a substantial, direct, and immediate interest in the outcome of the litigation. Fumo. A substantial interest in the outcome of litigation is one that surpasses the common interest of all citizens in procuring obedience to the law. Pa. Fed'n of Dog Clubs v. Commonwealth, 105 A.3d 51 (Pa. Cmwlth. 2014) (citing Johnson v. Am. Standard,

---

[7] Speaker Turzai argues Phantom Fireworks lacks standing to challenge any provisions of Act 43 not related to fireworks. This apparently is an oblique reference to a provision concerning tobacco settlement funds. In light of our conclusion below relating to severability, we need not decide that issue.

8 A.3d 318 (Pa. 2010); <u>Fumo</u>).  A direct interest requires a causal connection between the asserted violation and the harm complained of.  <u>Id.</u>  An interest is immediate when the causal connection is not remote or speculative.  <u>Id.</u>

In <u>Allegheny County v. Monzo</u>, 500 A.2d 1096 (Pa. 1985), our Supreme Court affirmed standing based on the petitioner's economic disadvantage, where a county motel room tax burdened motels competing with out-of-county establishments.  Motels throughout the county incurred increased tax expenses, but those near the county line could not easily recoup those expenses by raising room rates because of price competition from nearby motels across the county line not burdened by the county tax.  Because the tax's operation significantly affected and harmed the in-county motels, they had standing to challenge the tax.  <u>Id.</u>; <u>see also</u> <u>William Penn Parking Garage, Inc. v. Pittsburgh</u>, 346 A.2d 269 (Pa. 1975) (tax on public parking, although ostensibly imposed on parking patrons, was causally linked to harm to parking garage operators' businesses, giving them standing to challenge the tax).

Similarly, here, Phantom Fireworks alleges it must compete for sales with vendors in temporary structures having much lower overhead than brick and mortar facilities.  Having, in addition, lower licensing fees and little or no expense for safety features under Act 43, those vendors have a cost advantage, and thus a competitive pricing advantage.  Phantom Fireworks' pricing disadvantage constitutes significant, direct harm and therefore confers standing to challenge Act 43.  <u>See</u> <u>Monzo</u>; <u>William Penn Parking</u>.

### b. Taxpayer Standing

In addition, Phantom Fireworks argues it has standing as a taxpayer, separate from its standing under the traditional analysis. In general, status as a taxpayer does not alone confer standing to challenge the constitutionality of a statute. Stilp v. Gen. Assembly, 940 A.2d 1227 (Pa. 2007) (Stilp III) (citing Application of Biester, 409 A.2d 848 (Pa. 1979)). However, an exception to the general rule provides standing to a taxpayer who demonstrates a stronger interest in the litigation than that of other taxpayers. Id. This exception arises from a public policy of enabling the citizenry to assert statutory challenges that might otherwise be prevented by standing issues. Id.; see also Pittsburgh Palisades Park, LLC v. Commonwealth, 888 A.2d 655 (Pa. 2005).

> Taxpayer standing requires the party asserting it to satisfy five factors:
>
> (1) the governmental action would otherwise go unchallenged;
>
> (2) those directly and immediately affected by the complained of matter are beneficially affected and not inclined to challenge the action;
>
> (3) judicial relief is appropriate;
>
> (4) redress through other channels is unavailable; and
>
> (5) no other persons are better situated to assert the claim.

Pa. Dog Clubs, 105 A.3d at 58 (quoting Pittsburgh Palisades, 888 A.2d at 662; Consumer Party of Pa. v. Commonwealth, 507 A.2d 323, 329 (Pa. 1986), overruled on other grounds, Pennsylvanians Against Gambling Expansion Fund, Inc. v.

11

Commonwealth, 877 A.2d 383 (Pa. 2005) (<u>PAGE</u>)) (internal quotation marks and footnote omitted).

Here, Phantom Fireworks meets all five requirements for taxpayer standing. The absence of other civil actions concerning Act 43's constitutionality suggests it will go unchallenged if Phantom Fireworks is denied standing. <u>See</u> <u>Pa. Dog Clubs</u>. The other entities directly affected by Act 43 are the vendors selling fireworks in temporary structures, which benefit from the expansion of legally permissible product lines, without the concomitant expense of safety features Phantom Fireworks must provide in its brick and mortar stores. Thus, the vendors using temporary structures will not be inclined to challenge the amendment to Act 43. <u>Id.</u> Judicial relief is proper because determining the constitutionality of a statute is a judicial duty. <u>Id.</u> No reasonably available alternate channel to challenge Act 43 is apparent. <u>Id.</u> Because Phantom Fireworks purportedly holds the largest market share of fireworks sales in Pennsylvania (at least until the enactment of Act 43), it appears no other entity adversely affected by Act 43 is better situated to challenge the constitutionality of its fireworks provisions. None of the parties pointed to any such entity.[8]

Accordingly, Phantom Fireworks has standing alternately under the taxpayer standing exception.

---

[8] Unlike in <u>Pittsburgh Palisades Park, LLC v. Commonwealth</u>, 888 A.2d 655 (Pa. 2005), on which Executive Respondents rely, nothing in the pleadings here suggests a special interest among legislators in challenging Act 43. Executive Respondents do not contend Act 43 was "contested hotly" before its enactment, nor that any provision of Act 43 "strips the General Assembly and [its] successors of the ability to amend [Act 43's] provisions." <u>Id.</u> at 662.

12

### 3. Executive Respondents as Parties

Executive Respondents argue they are not proper parties to this action. We agree as to Governor Wolf, but disagree as to the other Executive Respondents.

Phantom Fireworks and Executive Respondents agree that in accordance with Allegheny Sportsmen's League v. Ridge, 790 A.2d 350 (Pa. Cmwlth. 2002), the Governor is not a necessary party to a declaratory judgment action challenging the constitutionality of a statute where the head of the executive agency responsible for implementing and defending that statute is already a party. See also Leonard v. Thornburgh, 467 A.2d 104 (Pa. Cmwlth. 1983) (en banc) (Governor not required to participate in action challenging constitutionality of tax statute, where Secretary of the Department of Revenue was a party and represented Governor's interests; avoiding unnecessary duplication of parties was more efficient and expeditious). Further, Governor Wolf is not an indispensable party merely because he signed the challenged statute into law. Howard v. Commonwealth, 957 A.2d 332 (Pa. Cmwlth. 2008) (citing Pa. Sch. Bds. Ass'n).

Here, as Executive Respondents correctly observe, the Department of Revenue is responsible for receiving the tax funds generated under Act 43. The Department of Agriculture is responsible for the licensing and inspection duties set forth in Article XXIV (pertaining to fireworks), the portion of Act 43 at issue. Both Secretary Redding and Secretary Hassell are named parties. Therefore, Governor Wolf is not a necessary party.

However, we discern no merit in Executive Respondents' argument that Secretary Hassell and Secretary Redding should be dismissed from this action. As

13

discussed above, <u>Allegheny Sportsmen's League</u> and <u>Leonard</u> support retaining as parties the heads of administrative agencies responsible for implementing a statute and defending it against constitutional challenges.

<u>Stilp v. Commonwealth</u>, 910 A.2d 775 (Pa. Cmwlth. 2006), <u>aff'd</u>, 974 A.2d 491 (Pa. 2009) (<u>Stilp II</u>), cited by Executive Respondents, does not support their argument. This Court in <u>Stilp II</u> concluded the determination of proper parties in that case was governed by <u>Phila. I</u>. In turn, <u>Phila. I</u> included participation as parties by both legislative and executive branch respondents. Moreover, the <u>Stilp II</u> action included both the Governor and the state Treasurer among the respondents, in addition to state legislative leaders. The discussion of necessary parties focused on whether additional legislators should be required, not whether the executive parties were indispensable.

Accordingly, we determine that Governor Wolf is not a necessary party, because the heads of the two administrative agencies charged with implementing and defending the provisions of Article XXIV of Act 43 are already parties. We dismiss Governor Wolf from this action. However, Secretary Hassell and Secretary Redding are necessary parties, and we will not dismiss them from the action.

### B. Ripeness

Speaker Turzai further contends Phantom Fireworks' claim seeking declaratory and injunctive relief is not ripe. We discern no merit in this argument.

"[T]he doctrine of ripeness concerns the timing of a court's intervention in litigation." <u>Phila. Entm't & Dev. Partners, L.P. v. City of Phila.</u>, 937 A.2d 385,

14

392 (Pa. 2007). "The basic rationale underlying the ripeness doctrine is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" Id. (quoting Abbott Labs v. Gardner, 387 U.S. 136, 148 (1967)).

However, the Declaratory Judgments Act, 42 Pa. C.S. §§7531-7541, provides a relatively lenient standard for ripeness in declaratory judgment actions. The Declaratory Judgments Act is remedial in nature. 42 Pa. C.S. §7541(a). "Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." Id. An action is ripe for adjudication under the Declaratory Judgments Act where it presents "the ripening seeds of a controversy." Wecht v. Roddey, 815 A.2d 1146, 1150 (Pa. Cmwlth. 2002).

Here, Phantom Fireworks alleges it is already experiencing business losses arising from competition by transient vendors. Further, as Act 43 expressly authorizes sales by such vendors, Phantom Fireworks has no legal recourse to recover its business losses from them. It can only hope to address such losses going forward by means of this lawsuit. Phantom Fireworks' challenge to Act 43 is therefore ripe for adjudication.

This Court's decision in City Council of Philadelphia ex. rel. City of Philadelphia v. Commonwealth, 806 A.2d 975 (Pa. Cmwlth. 2002) (Phila. II), vacated and remanded, 847 A.2d 55 (Pa. 2004), on which Speaker Turzai relies, is distinguishable. In Phila. II, the petition did not allege any loss of revenue, and any

15

future loss would be recoverable through normal legal channels.  Moreover, and of significance, our Supreme Court <u>vacated</u> and remanded the matter for a decision on the merits, rejecting this Court's initial conclusion that the controversy was not ripe.

<u>Philadelphia Entertainment</u> is likewise distinguishable.  In that case, the petitioner challenged the constitutionality of a zoning ordinance that had not been enforced or applied.  By contrast, Act 43 is a taxing statute, and its provisions are in force.  Moreover, the authorized sale of fireworks in temporary structures, the main target of Phantom Fireworks' petition, has occurred.  As stated above, Phantom Fireworks alleges in its pleading that it is already suffering losses in sales because of the competitive edge Act 43 gives to transient competitors.[9]

We conclude this case is ripe for adjudication.

### C. Failure to Answer Preliminary Objections

Phantom Fireworks did not file an answer to any of the preliminary objections, although it briefed its opposition to them.  Senator Scarnati argues that the lack of a responsive pleading by Phantom Fireworks entitles him to prevail by

---

[9] The other two authorities Speaker Turzai cites in his ripeness discussion are inapt because they do not involve ripeness, but rather, mootness.  <u>See</u> <u>In re Gross</u>, 382 A.2d 116 (Pa. 1978); <u>Harris v. Rendell</u>, 982 A.2d 1030 (Pa. Cmwlth. 2009), <u>aff'd</u> <u>per</u> <u>curiam</u>, 992 A.2d 121 (Pa. 2010).

default regarding his preliminary objections asserting failure to join necessary parties and lack of capacity to sue (standing).[10]

Pa. R.C.P. No. 1028(a)(5) includes lack of capacity to sue and nonjoinder of a necessary party among the bases for preliminary objections. Pa. R.C.P. No. 1028(c)(2) suggests these categories of preliminary objections "cannot be determined from facts of record." Therefore, if the respondent filing preliminary objections endorses them with a notice to plead, the petitioner must file a response, to the extent required under Pa. R.C.P. No. 1029.

Senator Scarnati endorsed his preliminary objections with a notice to plead. Therefore, we must determine whether Rule 1029 required Phantom Fireworks to file a responsive pleading on the issues of nonjoinder and standing.

Rule 1029 governs the effect of failure to deny averments in a pleading. Pa. R.C.P. No. 1029(a) requires the responding party to admit or deny each averment of fact in the preceding pleading. "Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication." Pa. R.C.P. No. 1029(b). By contrast, "[a]verments in a pleading to which no responsive pleading is required shall be deemed to be denied." Pa. R.C.P. No. 1029(d). Thus, whether Phantom Fireworks had to file a responsive pleading admitting or denying Senator Scarnati's preliminary objections concerning

---

[10] Senator Scarnati also demurred to all counts of the petition for review. He does not assert that Phantom Fireworks had any obligation to answer the averments of the preliminary objections comprising the demurrers.

17

indispensable parties and standing depends on whether those preliminary objections contained averments of fact.

Phantom Fireworks insists it did not need to answer Senator Scarnati's preliminary objections concerning nonjoinder and standing because they "contain no facts as to which a responsive pleading was required or could possibly have been useful." Pet'rs' Br. at 27. We agree.

Our review of Senator Scarnati's preliminary objections reveals that those asserting nonjoinder of a necessary party and lack of standing aver only conclusions of law, not disputed facts. See Preliminary Objections by Respondent Senator Joseph B. Scarnati, III ¶¶6-22. Accordingly, Phantom Fireworks did not have to respond to those averments.[11] Rather, they are deemed denied under Pa. R.C.P. No. 1029(d).

### D. Failure to Brief Immunity Defense

In their preliminary objections, Executive Respondents raised the defense of sovereign immunity. However, Phantom Fireworks asserts Executive

---

[11] In his preliminary objection relating to necessary parties, Senator Scarnati also argued Phantom Fireworks failed to provide notice to the Attorney General of Pennsylvania that it was challenging the constitutionality of a statute. We observe that a notice to the Attorney General is attached to the petition for review. Moreover, Senator Scarnati did not brief that issue. Therefore, he has waived it. Triage, Inc. v. Pa. Dep't of Transp., 537 A.2d 903 (Pa. Cmwlth. 1988).

In any event, waiver is not a mandatory sanction for failure to give the requisite notice to the Attorney General; rather, the court may stay the action to allow notice and time for the Attorney General to be heard, or may simply proceed without a response from the Attorney General. See Pa. R.C.P. No. 235; Mosley v. Pittsburgh Pub. Sch. Dist., Civ. Action No. 07-1560, 2008 U.S. Dist. LEXIS 42189 (W.D. Pa. May 27, 2008).

Respondents waived that preliminary objection because they did not brief the issue of sovereign immunity in support of their preliminary objections. We agree. A party waives a preliminary objection it does not support in its brief. Triage, Inc. v. Pa. Dep't of Transp., 537 A.2d 903 (Pa. Cmwlth. 1988). We therefore overrule Executive Respondents' preliminary objection asserting sovereign immunity.[12]

### E. Separate Count Asserting Request for Relief

Senator Scarnati moves to strike Count V pursuant to Pa. R.C.P. No. 1020(a), arguing it is not a cause of action, but merely a request for relief. This argument is without merit.

Pa. R.C.P. No. 1020(a) requires: "Each cause of action and any special damage related thereto shall be stated in a separate count containing a demand for relief." Thus, on its face, Rule 1020(a) only requires that a cause of action and any related "special damage" must be stated in the same count.

The Pennsylvania Rules of Civil Procedure do not define "special damage." However, Pennsylvania courts apply "special damage" to mean calculable monetary losses, such as out-of-pocket expenses. See, e.g., McGlawn v. Pa. Human Relations Comm'n, 891 A.2d 757, 775-76 (Pa. Cmwlth. 2006) (including in "special damages" specific fees, premiums, and interest, but not embarrassment and humiliation); Agriss v. Roadway Express, Inc., 483 A.2d 456, 474 (Pa. Super. 1984) (equating "special damages" with "concrete economic loss computable in dollars").

---

[12] We note, however, that notwithstanding a waiver of the immunity defense in connection with preliminary objections, a party may still reassert that defense in its answer, if any, to the petition for review, following disposition of the preliminary objections. Triage.

A request for injunctive relief is equitable in nature. It is the antithesis of a legal claim for calculable money damages. Therefore, we conclude Rule 1020(a) is inapplicable to a demand for declaratory and injunctive relief.

Moreover, when considering preliminary objections regarding claims seeking equitable relief, this Court has discretion to disregard pleading imperfections. See Nagle v. Pa. Ins. Dep't, 406 A.2d 1229 (Pa. Cmwlth. 1979), rev'd in part on other grounds sub nom. Pechner v. Pa. Ins. Dep't, 452 A.2d 230 (Pa. 1982). To the extent Count V may be deemed defective, we disregard any such defect here. In light of our disposition of the other preliminary objections and the application for summary relief, any pleading defect is immaterial. Therefore, we deny the motion to strike.

## IV. Request for Summary Relief

Pa. R.A.P. 1532(b) allows this Court to enter judgment upon application any time after the filing of a petition for review, when the applicant's right to relief is clear. Taglienti v. Dep't of Corr., 806 A.2d 988 (Pa. Cmwlth. 2002). We may grant summary relief where the dispute is legal rather than factual, but not where there are disputes of fact. Id. (citing Milton S. Hershey Med. Ctr. v. Commonwealth, 788 A.2d 1071 (Pa. Cmwlth. 2001)). We review the record in the light most favorable to the opposing party and resolve all doubts concerning the existence of a genuine issue of material fact in favor of that party. Taglienti (citing P.J.S. v. Pa. State Ethics Comm'n, 723 A.2d 174 (Pa. 1999)).

An application for summary relief is appropriate where a party asserts a challenge to the constitutionality of a statute and no material facts are in dispute.

20

Phila. Fraternal Order of Corr. Officers v. Rendell, 701 A.2d 600 (Pa. Cmwlth. 1997) (citing Magazine Publishers v. Dep't of Revenue, 618 A.2d 1056 (Pa. Cmwlth. 1992), aff'd, 654 A.2d 519 (Pa. 1995)).

Here, our review of the various Respondents' briefs reveals no dispute of fact. The parties argue solely questions of law relating to the constitutionality of Act 43. Therefore, consideration of Phantom Fireworks' request for summary relief concerning its constitutional challenges is appropriate at this time.

## A. Legal Standard of Constitutionality

"[I]n interpreting a constitutional provision, we view it as an expression of the popular will of the voters who adopted it, and, thus, construe its language in the manner in which it was understood by those voters." Washington v. Dep't of Pub. Welfare, 188 A.3d 1135, 1149 (Pa. 2018) (citing Stilp v. Commonwealth, 905 A.2d 918 (Pa. 2006) (Stilp I)). "[W]e do not consider such language in a 'technical or strained manner, but are to interpret its words in their popular, natural and ordinary meaning.'" Id. (quoting Scarnati v. Wolf, 173 A.3d 1110, 1118 (Pa. 2017)). "'[W]e must favor a natural reading which avoids contradictions and difficulties in implementation, which completely conforms to the intent of the framers and which reflects the views of the ratifying voter.'" Id. (quoting In re Bruno, 101 A.3d 635, 659 (Pa. 2014); Commonwealth ex rel. Paulinski v. Isaac, 397 A.2d 760, 766 (Pa. 1979)). "'[O]ur ultimate touchstone is the actual language of the Constitution itself.'" Id. (quoting Stilp I, 905 A.2d at 939).

There is a strong presumption in the law that legislative enactments are constitutional. Christ the King Manor v. Dep't of Pub. Welfare, 911 A.2d 624 (Pa.

21

Cmwlth. 2006) (en banc), aff'd per curiam, 951 A.2d 255 (Pa. 2008) (citing PAGE). A court will not declare a statute unconstitutional unless the constitutional violation is clear, palpable, and plain. Id. The court will resolve all doubts in favor of constitutionality. Id. Thus, a party challenging the constitutionality of a statute has a heavy burden of persuasion. Id.

**B. Article III Challenges**
**1. Background and Purpose of Article III**

When interpreting the Pennsylvania Constitution, courts consider both the circumstances surrounding enactment of its provisions and the probable construction the voters placed on it. Washington (citing Scarnati). In Washington, our Supreme Court examined the historical and legal background of Article III of the Pennsylvania Constitution, as well as the fundamental purposes the voters intended the provisions of Article III to serve. See id.

In the period during and after the Civil War, special interest legislation was commonplace, enabled by abuses and insufficient controls in the legislative process. Id. Deceptive titles of bills, mixing disparate subjects in omnibus legislation, and hasty amendments without notice to lawmakers, all caused the voters to lose faith in the General Assembly's performance of its constitutional mandate to represent their interests. Id. Consequently, in 1873, an overwhelming majority of voters approved a constitutional convention so that amendments to the Pennsylvania Constitution could address these abuses. Id. Article III was a product of that convention. Id. "[T]he overarching purpose of [the] restrictions on the legislative process contained in Article III was to furnish essential constitutional safeguards to ensure our Commonwealth's government is open, deliberative, and accountable to

22

the people it serves." Id. at 1147. "[A]s these provisions are mandatory constitutional directives from the people, not mere advisory guidelines, the General Assembly must comply with them in the course of the legislative process." Id.

Article III, Section 1 provides: "No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose." PA. CONST. art. III, §1. The objective of Article III, Section 1 was to halt the practice of adding, at various stages of the legislative process, provisions unrelated to a bill's original purpose. Washington. By eliminating such stealth tactics, legislators considering the bill would have sufficient notice of all its provisions and could cast informed votes. Id. Article III, Section 1 is unchanged since its enactment in 1874. Id.

Article III, Section 3 provides: "No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof." PA. CONST. art. III, §3. Article III, Section 3 serves the dual purposes of preventing enactment of laws that could not pass on their own, and promoting thorough scrutiny of single subject bills. Pa. State Ass'n of Jury Comm'rs v. Commonwealth, 64 A.3d 611 (Pa. 2013).

Our Supreme Court recognizes that the nature of the legislative process includes some changes as a bill passes through each house in the General Assembly. Washington. In considering constitutional challenges under Article III, Sections 1

23

and 3 (as well as 4),[13] courts apply a "germaneness" analysis. Id. at 1151. "This test requires examination of the original subject of the bill and then a determination of whether 'the amendments to the bill added during the legislative process are germane to and do not change the general subject of the bill.'" Id. (quoting Stilp I, 905 A.2d at 959; Pa. Sch. Bds. Ass'n v. Commonwealth Ass'n of Sch. Adm'rs, 805 A.2d 476, 488 (Pa. 2002)). "Amendments are germane to the original general subject matter of a bill if both the subject of the amendments and the subject of the original contents of the bill 'have a nexus to a common purpose.'" Id. (quoting Commonwealth v. Neiman, 84 A.3d 603, 612 (Pa. 2013)). "In other words, the subject of the amendments and the subject of the original bill language must constitute 'a unifying scheme to accomplish a single purpose.'" Id. (quoting Neiman, 84 A.3d at 612; Phila. I, 838 A.2d at 589). "In making this determination, a reviewing court may hypothesize a 'reasonably broad' unifying subject; however such a hypothetical subject cannot be unduly expansive, lest the purpose of the constitutional provision be defeated." Id. at 1152 (quoting Phila. I, 838 A.2d at 589).

---

[13] Phantom Fireworks does not challenge Act 43 on the basis of Article III, Section 4, the section at issue in Washington v. Department of Public Welfare, 188 A.3d 1135 (Pa. 2018). However, our Supreme Court's recent analysis of Article III, Section 4 in Washington is directly applicable in this case:

> Our [Supreme] Court utilizes the same germaneness test [used in analyzing Article III, Section 4 challenges] to determine whether the manner of passage of a bill violates Article III, Section 1 and Article III, Section 3; thus a finding that amendments to a bill made during the legislative process are not germane to the subject of its original provisions will also support a determination that the bill's passage violated these constitutional provisions as well.

Id. at 1151 n.33 (citing Stilp v. Commonwealth, 905 A.2d 918, 919 (Pa. 2006); Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth, 877 A.2d 383, 410 (Pa. 2005)). We note that our Supreme Court decided Washington after all briefing of the preliminary objections and application for summary relief in this case was complete.

24

## 2. Phantom Fireworks' Article III Challenges
## a. Original Purpose of Bill

The original bill that eventually became Act 43 was HB 542. That short bill contained only a proposed amendment adding a section to the Tax Reform Code that required remote sellers to notify Pennsylvania buyers of their sales and use tax obligations, and imposed fines for failure to do so.

As ultimately enacted, Act 43 contained voluminous additions to HB 542, including Article XXIV, Fireworks, the article challenged here by Phantom Fireworks. Thus, the changes made to the original bill were extensive. However, in hypothesizing reasonably broad purposes for legislative bills, our Supreme Court has viewed extensive amendments as still within the overarching purposes of the original bills.

In Stilp I, the original bill's only provision sought to assure that the Governor would be the highest-paid executive officer in the Commonwealth. Id. Subsequent voluminous additions to the bill prior to its passage added significant raises in compensation to the judiciary and the General Assembly, as well as to high-ranking executive officers. Id. Our Supreme Court rejected an original purpose challenge to the bill as passed. The Court found both the original bill and the final version as amended related to the overarching subject of compensation for government officials. Id.

In PAGE, the original bill would merely have allowed police to perform criminal background checks and fingerprinting of persons in the horse racing industry. Id. As finally enacted, the bill was more than 140 times longer than its

original form and included provisions authorizing and regulating slot machines within the Commonwealth.  Id.  Our Supreme Court found no violation of Article III, Section 1.  The Court determined both the original and final versions of the bill related to the regulation of gambling.  Id.

This Court likewise views a bill's original purpose broadly.  In City of Philadelphia v. Rendell, 888 A.2d 922 (Pa. Cmwlth. 2005), the original bill revised residency requirements for parking authority members, clarified police officers' voting rights, and authorized municipalities to remove fluoride from their drinking water.  The final bill mandated that the parking authority would continue administering and enforcing on-street parking regulations, and that net parking revenues would be directed to the Philadelphia School District.  Id.  The original provisions concerning police officers' voting rights and removal of fluoride from municipal water supplies were not in the final bill.  Id.  Nonetheless, this Court rejected an original purpose challenge to the constitutionality of the final bill as enacted.  We concluded that both the original and final versions of the bill served the same overarching purpose of regulating parking authorities.  Id.

This Court also rejected an original purpose challenge in Common Cause v. Commonwealth, 710 A.2d 108 (Pa. Cmwlth. 1998), aff'd per curiam, 757 A.2d 367 (Pa. 2000).  There, the original bill contained only provisions regarding seasonal registrations of vehicles.  As amended, the final bill contained voluminous additions concerning vehicle registration fees, highway maintenance funding allocations, trucking regulations, fuel taxes, and laws governing mass transit.  Id.

26

We determined the original and final versions of the bill related to the same general subject, vehicular transportation.  Id.

Here, Phantom Fireworks argues Act 43's fireworks provisions pertain mainly to health and safety rather than taxes.  However, the decisions above demonstrate that neither the volume of the additions to the original bill nor the expansion of the subject matter's parameters will give rise to a violation of Article III, Section 1, provided the original and final versions fall under the same broad, general subject area.  Consistent with the decisions discussed above, we conclude that the broad overarching purpose of both original HB 542 and the final version as passed by the General Assembly is taxation and revenue generation.

Therefore, we discern no violation of Article III, Section 1.

**b. Single Subject and Clear Title Requirements**

As discussed above, there were two legislative practices that the framers and the electorate sought to eliminate with their adoption of Article III, Section 3.  The first involved the insertion into a single bill of a number of distinct and independent subjects of legislation in order to deliberately hide the real purpose of the bill.  Washington; Leach v. Commonwealth, 118 A.3d 1271 (Pa. Cmwlth. 2015), aff'd, 141 A.3d 426 (Pa. 2016).  The second was the practice of "logrolling," which involves "embracing in one bill several distinct matters, none of which could singly obtain the assent of the legislature, and procuring its passage by combining the minorities who favored the individual matters to form a majority that would adopt them all." Leach, 118 A.3d at 1279 (quoting Neiman, 84 A.3d at 611).  "[T]he

single-subject requirement prevents the attachment of riders that could not become law on their own to popular bills that are certain to pass." Id.

Accordingly, our Supreme Court interprets Article III, Section 3 as mandating that a final bill enacted by the General Assembly meet two specific criteria: "First, the title of the bill must clearly express the substance of the proposed law. [Phila. I] Second, the differing topics within the bill must be 'germane' to each other …." Jury Comm'rs, 64 A.3d at 616; see Neiman, 84 A.3d at 612 (quoting Jury Comm'rs).

Here, Petitioners contend Act 43 does not satisfy either criterion. We disagree.

### i. Single Subject Requirement

Guided by the principles our Supreme Court articulated in Washington and Neiman, we cannot conclude that Act 43 clearly, palpably and plainly violates the single subject requirement set forth in Article III, Section 3 of the Pennsylvania Constitution. Although Act 43 includes provisions relating to taxation, fireworks, and tobacco settlement revenue, they all fall within the single unifying subject of revenue generation. Accord PAGE, 877 A.2d at 396 (unifying subject of "regulation of gaming" was sufficient to satisfy Article III, Section 3's single subject requirement); Christ the King Manor, 911 A.2d at 635 (unifying subject of "regulation of publicly funded healthcare services" was sufficient to satisfy Article III, Section 3's single subject requirement).

28

Act 43's fireworks provisions include a new 12% consumer fireworks tax, as well as seller application and licensing fees. Pet. for Review, Ex. A at 37. The insertion of additional fireworks-related provisions does not destroy the overarching purpose of taxation and generating revenue.

Further, our Supreme Court directs that "where the provisions added during the legislative process assist in carrying out a bill's main objective, or are otherwise 'germane' to the bill's subject as reflected in the title, the requirements of Article III, Section 3 are met." PAGE, 877 A.2d at 395.

While certain provisions related to the regulation of fireworks may not directly relate to taxation, those provisions undoubtedly "assist in carrying out" Act 43's "main objective," which is revenue generated from an expanded and modernized fireworks market. Stated differently, Act 43 adds a new tax rate for fireworks, distributes tax revenue from the sale of fireworks, broadens the tax base by expanding fireworks sales, and attempts to ensure that tax revenues from fireworks sales are generated safely.

There are other constitutional issues related to Act 43, as discussed below. However, for these reasons, we discern no violation of Article III, Section 3's single subject requirement.

### ii. Clear Expression of Title Requirement

"Although Article III, Section 3 mandates that a bill's subject be set forth in its title, it does not require a title to be an index or a synopsis of the bill's contents." Christ the King Manor, 911 A.2d at 635 (citing PAGE); see also

29

DeWeese v. Weaver, 824 A.2d 364, 372 (Pa. Cmwlth. 2003) (en banc) ("The title serves as a signal not a précis of the bill's contents."). "Indeed, to require the title to catalogue every provision of a bill might not only make the title unworkably long, but might foster the very problems that the requirement was meant to prevent." PAGE, 877 A.2d at 405-06. As this Court explained,

> Article III, Section 1 was not intended to tyrannize legislators with pedantic and picayune standards for drafting a bill's title. Commonwealth v. Stofchek, [185 A. 840 (Pa. 1936)]. The focus should be on the substance of the bill, not its title. The constitutional mandate is intended only to prevent fraudulent efforts to sneak legislation past unknowing legislators or the Governor. Id. In short, as difficult as it may be to have a statute declared unconstitutional for failing to clear the low fence of germaneness, it is that much harder to set aside a statute for the reason that it moved through the legislative process under a deceptive title.

DeWeese, 824 A.2d at 372 n.15.

A party challenging constitutionality under Article III, Section 3's "clear expression of title" requirement must show "either (1) that the legislators and the public were actually deceived as to the act's content at the time of passage, or (2) that the title on its face is such that no reasonable person would have been on notice as to the act's contents." Christ the King Manor, 911 A.2d at 635 (emphasis in original).

Here, as Phantom Fireworks acknowledges, the title of Act 43 includes an indication that it is "providing for fireworks." Pet. for Review, Ex. A at 1. The

petition for review fails to aver or show that legislators or members of the public were actually deceived as to Act 43's contents at the time of passage. Therefore, Phantom Fireworks does not satisfy the first prong of a clear title analysis. See Christ the King Manor.

In applying the second prong of a clear title analysis, we likewise examine the title at the time of passage. Here, we conclude that the final title of Act 43, expressly listing "providing for fireworks" among the primary topics covered within the bill, Pet. for Review, Ex. A at 1, sufficiently places reasonable persons on notice as to the contents of Act 43. See PAGE. Contrary to Phantom Fireworks' assertion, nothing more is required. Id. at 406 ("a title does not need to express each and every subtopic contained in the bill …").

The decisions relied on by Phantom Fireworks, Sears v. Corbett, 49 A.3d 463 (Pa. Cmwlth. 2012), rev'd and vacated sub nom. Sears v. Wolf, 118 A.3d 1091 (Pa. 2015) and Provident Life & Trust Co. v. Hammond, 79 A. 628 (Pa. 1911), do not compel a different result. Ruling on preliminary objections in Sears, this Court determined that two acts redirecting tobacco settlement monies violated Article III, Section 3's clear expression of title requirement. On further appeal, however, our Supreme Court reversed, and also expressly "vacated" this Court's "opinions on preliminary objections and summary relief," including our discussion regarding Article III, Section 3. Sears v. Wolf, 118 A.3d at 1105 (emphasis added). Thus, Phantom Fireworks cannot rely on that decision in support of its arguments here.[14]

_____

[14] We admonish litigants from citing vacated opinions without fully acknowledging negative subsequent history.

31

In <u>Hammond</u>, the Supreme Court held that the title of a 1907 amendatory enactment was defective because the date of approval of the original act, as recited in the title of the amending act, was incorrect. There was no such act of the date specified; therefore, the title was fatally defective. <u>Hammond</u> is inapposite here; this case does not involve the title of a statute referencing another statute that does not exist.

For these reasons, we see no violation of Article III, Section 3's clear expression of title requirement.

### c. Repealed Text Requirement

Act 43 expressly repealed the former Fireworks Law, 35 P.S. §§1271-78. Citing <u>PAGE</u>, Phantom Fireworks contends the General Assembly's failure to include in Act 43 the entire text of the Fireworks Law, in brackets, violated the requirement of Article III, Section 6 of the Pennsylvania Constitution that "no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length." PA. CONST. art. III, §6.

Our Supreme Court's decision in <u>PAGE</u> applies generally to Article III constitutional issues. <u>See</u> <u>Christ the King Manor</u>. Pertinent here, the statute at issue in <u>PAGE</u> repealed a section of an earlier statute. The repeal provision simply referred to the repealed statute by its citation and popular name. The new statute did not contain the repealed language in brackets. The Court observed that Article III aims to require full notice of all proposed legislative enactments, so legislators and the public can see exactly what changes are under consideration, without the need to

refer back to the prior version for comparison. PAGE. Therefore, the Court concluded, "Article III, [S]ection 6 requires, with regard to a directed, specific repealer, the effectuation of which is not otherwise apparent from the associated bill, that as much of the law that is expressly repealed by the bill must be published at length." Id. at 412.

However, in Christ the King Manor, this Court sustained a demurrer to a constitutional challenge similar to Phantom Fireworks' repealed text challenge here. The petitioners challenged the constitutionality under Article III, Section 6 of a statutory amendment altering the scope of permissible regulations concerning nursing care reimbursements during a specified period. In that case, the amendment did not contain a specific repeal of the prior law. This Court found the petition failed to state an Article III, Section 6 claim for two reasons. First, the new amendment was more "in the nature of a temporary inconsistency rather than the directed, specific repeal or amendment which is the subject of the constitutional provision." Id. at 639. Second, and of significance here, the petitioners did not allege that any member of the General Assembly was misled by the absence of the entire text of the prior law. Id. Based on that reasoning and the strong presumption of constitutionality accorded a statute, this Court agreed with the respondents in Christ the King Manor that the petitioners failed to present a viable constitutional challenge to the defective repeal. Id.

Here, the repealer at issue is substantially similar to that in PAGE. However, Phantom Fireworks, like the petitioners in Christ the King Manor, failed to allege that anyone was misled by the absence of the full text of the Fireworks Law

33

in brackets within Act 43. In light of the presumption of constitutionality and our disposition of the other issues in this case, we deny summary relief on this issue.

## C. Delegation of Legislative Authority

Phantom Fireworks challenges Act 43's definition of a "temporary structure" as including "temporary retail sales stands, tents, canopies and membrane structures meeting the specifications of NFPA 1124." Act 43 defines "NFPA 1124" as "The National Fire Protection Association Standard 1124, [CODE FOR THE MANUFACTURE, TRANSPORTATION, AND STORAGE OF FIREWORKS AND PYROTECHNIC ARTICLES], 2006 edition, or any subsequent edition." Pet. for Review, Ex. A at 33 (emphasis added). Phantom Fireworks argues that regulating temporary structures by reference to NFPA 1124, as Act 43 defines that term, constitutes an unconstitutional delegation of legislative authority by the General Assembly. We are constrained to agree.

Our Supreme Court's decision in Protz v. Workers' Compensation Appeal Board (Derry Area School District), 161 A.3d 827 (Pa. 2017) controls the delegation issue in this case. At issue in Protz was a provision of the Workers' Compensation Act[15] relating to impairment rating evaluations (IREs) of workers' compensation claimants. Section 306(a.2) of the Workers' Compensation Act, 77 P.S. §511.2(1),[16] required physicians performing IREs to apply the methodology provided in "the most recent edition" of the American Medical Association [AMA] GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT (GUIDES). Protz, 161 A.3d

---

[15] Act of June 2, 1915, P.L. 735, as amended, 77 P.S. §§1-1041.4, 2501-2708.

[16] Added by Act of June 24, 1996, P.L. 350.

34

at 830 (quoting 77 P.S. §511.2(1)). The Court found this statutory provision violated Article II, Section 1 of the Pennsylvania Constitution, which vests all legislative power in the General Assembly. Protz, 161 A.3d at 830.

As the Supreme Court explained, "when the General Assembly empowers some other branch or body to act, our jurisprudence requires 'that the basic policy choices involved in "legislative power" actually be made by the [l]egislature as constitutionally mandated.'" Id. at 833 (quoting Tosto v. Pa. Nursing Home Loan Agency, 331 A.2d 198, 202 (Pa. 1975)). "This constraint serves two purposes. First, it ensures that duly authorized and politically responsible officials make all of the necessary policy decisions, as is their mandate per the electorate …. [S]econd, it seeks to protect against the arbitrary exercise of unnecessary and uncontrolled discretionary power." Id. (citing William Penn Parking Garage).

Accordingly, when the General Assembly assigns any authority or discretion to execute or administer a law, "the Constitution imposes two fundamental limitations. First, … the General Assembly must make 'the basic policy choices,' and second, the legislation must include 'adequate standards which will guide and restrain the exercise of the delegated administrative functions.'" Id. at 833-34 (quoting PAGE, 877 A.2d at 418). As the Court observed further, a permissible delegation of legislative authority must "include concrete measures to channel the [delegatee's] discretion, … safeguards to protect against arbitrary, ad hoc decision making, such as a requirement that the [delegatee] hold hearings, allow for public notice and comment, or explain the grounds for its [decisions] in a reasoned opinion

35

subject to judicial review." Id. at 835 (citing and discussing W. Phila. Achievement Charter Elementary Sch. v. Sch. Dist. of Phila., 132 A.3d 957 (Pa. 2016)).

Applying these principles in Protz, the Court found the General Assembly's delegation of authority to the AMA failed to provide any of the necessary safeguards. Without any policy statement or other limiting parameters, the AMA could create any formula, including one that would yield a loss of disability benefits for every claimant, or alternatively, for no claimant. Id. Moreover, it could change the formula at will, potentially with such frequency that no one could keep up with the changes, or alternatively, with such infrequency as to fall behind recent medical advances. Id. It could add new provisions or remove existing ones. Id.

The Court also observed that the General Assembly failed to "require that the AMA hold hearings, accept public comments, or explain the grounds for its methodology in a reasoned opinion, which then could be subject to judicial review. Further, the AMA physicians who author the GUIDES are, of course, not public employees who may be subject to discipline or removal." Id. at 836 (citing Tosto).

Here, the provisions of Act 43 at issue suffer from the same constitutional defects as the AMA standards in Protz. The General Assembly delegated authority to the NFPA without providing any of the safeguards required to conform that delegation of authority to constitutional strictures. The General Assembly provided no policy statement or other limiting parameters, leaving the NFPA free to create, alter, or remove, as frequently or infrequently as it chooses, any standard it chooses concerning temporary structures used to sell fireworks.

36

Moreover, without statutory controls, NFPA drafters may be open to influence by trade groups or individuals whose interests may or may not match those of the electors.

Moreover, as in <u>Protz</u>, the General Assembly here failed to include in Act 43 any provisions that would require the NFPA to hold hearings, accept public comments, or explain the grounds for its safety standards in reasoned opinions which are subject to judicial review. Similarly, the private individuals who draft the NFPA's safety standards are not public employees subject to discipline or removal by the General Assembly or any public agency. Notably, although Act 43 does contemplate safety inspections of the temporary structures, neither the General Assembly nor the inspectors have any control over the safety standards to be applied in those inspections. <u>Cf.</u> <u>Protz</u> 161 A.3d at 836 (physician performing IRE is constrained by law to follow the AMA's methodologies, with "no power to limit the AMA's delegated authority").

Speaker Turzai urges us to construe Act 43 in a manner that will render it constitutional, by simply reading the definition of NFPA 1124 as limited to its 2006 version. We are not free to do so. The plain language of the definition refers to the 2006 edition of NFPA 1124 "or any subsequent edition." We cannot ignore the clear language of Act 43 as drafted. <u>Accord</u> <u>Protz</u>, 161 A.3d at 839 (Court would not construe statute requiring "most recent edition" of AMA methodologies to mean the specific edition in effect when the statute was enacted).

37

For all of these reasons, we conclude that Act 43's provisions relating to temporary structures violate Article II, Section 1 of the Pennsylvania Constitution, as an impermissible delegation of legislative authority by the General Assembly.

### D. Severability

Having determined that Act 43's provisions relating to temporary structures unconstitutionally delegate legislative authority to the NFPA, we next consider whether we may sever the unconstitutional provisions of Act 43 and thereby leave the remainder of the statute intact. We conclude the portions of Act 43 relating to temporary structures are severable from the other provisions of Act 43.

Pennsylvania public policy favors severability of statutes containing unconstitutional provisions. Annenberg v. Commonwealth, 757 A.2d 338 (Pa. 2000) (citing Pa. Dep't of Educ. v. First Sch., 370 A.2d 702 (Pa. 1977)).

> The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa. C.S. §1925.

38

The legislature's intent is of primary significance in determining severability. Nextel Commc'ns of the Mid-Atlantic, Inc. v. Commonwealth, 171 A.3d 682 (Pa. 2017), cert. denied sub nom. Nextel Commc'ns of the Mid-Atlantic, Inc. v. Pa. Dep't of Revenue, ___ U.S. ___, 138 S. Ct. 2635 (2018). The touchstone of legislative intent is whether, with the unconstitutional portion of a statute removed, the legislature would prefer what remains of the statute to no statute at all. Id. (citing D.P. v. G.J.P., 146 A.3d 204 (Pa. 2016)). We are also mindful that we should remove as little language as possible. D.P. (citing Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320 (2006)); see Commonwealth v. Killinger, 888 A.2d 592 (Pa. 2005).

Here, there is no question that the provisions of Act 43 outside Article XXIV do not relate to fireworks and will not be affected by striking any language from that Article. The real question is whether we may sever the unconstitutional portions of Article XXIV while leaving the remainder of the Article intact. As Act 43 is fundamentally a tax/revenue statute, we conclude that the General Assembly intended and would prefer to retain as much of Article XXIV as possible in order to minimize the effect of the unconstitutional language on the Commonwealth's revenues. Therefore, we will sever the language referring to the delegatee, "NFPA 1124," and to "Temporary structure" from the rest of Article XXIV.

However, severing the offending language of Act 43 requires removing several provisions in Article XXIV relating to temporary structures. Act 43's definitions of "NFPA 1124" and "Temporary structure" contain the actual language effecting the unconstitutional delegation of legislative authority. However, without

a definition of "Temporary structure," other provisions of Article XXIV referring to temporary structures are impossible to apply. See 1 Pa. C.S. §1925. Therefore, those references must be severed from the rest of the statute as well.

The mere fact that we must sever multiple provisions is not in itself an obstacle to severance as long as the remaining provisions of the statute can be applied without the severed language. Cf. Protz, 161 A.3d at 841 (although prevalence of the offending language does not by itself preclude severance, Court would not sever that language when the remainder would be incomprehensible). Based on our analysis above, we conclude Article XXIV, Sections 2407, 2408, and 2410 of Act 43 contain provisions that are impossible to apply without the definition of "temporary structure" in Article XXIV, Section 2401. Severing those provisions will leave the remaining portions of Article XXIV, as well as the rest of Act 43, complete and "capable of being executed in accordance with the legislative intent." 1 Pa. C.S. §1925.

Senator Scarnati advances a different severance remedy: severance of the phrase "or any subsequent edition" from the definition of "NFPA 1124" in Act 43. We reject this alternate severance approach. As in Protz, the insurmountable delegation problem here arises from the nature of the delegatee (NFPA) and its processes, in addition to utter confusion over which edition of the NFPA safety standards controls. The problem with the nature of the delegatee and its processes cannot be solved by removing the phrase "or any subsequent edition."

**E. Cross-Application for Summary Relief**

Senator Scarnati requests summary relief dismissing all claims asserted by Phantom Fireworks, on the basis that they fail as a matter of law. In light of our disposition of the application for summary relief, we grant the cross-application as to Counts II through V.

**V. Conclusion**

Based on the foregoing discussion, we dismiss Governor Wolf from this action.

We declare the following portions of Act 43 unconstitutional and enjoin their enforcement, as violative of Article II, Section 1 of the Pennsylvania Constitution:

1. Article XXIV, Section 2401, definitions of "NFPA 1124" and "Temporary structure";
2. Article XXIV, Section 2407, first clause: "Except as provided in section 2410" (the main section relating to temporary structures);
3. Article XXIV, Section 2408(a)(1)(ii) (relating to application fees for temporary structures);
4. Article XXIV, Section 2408(b)(4) (relating to annual license fees for temporary structures);
5. Article XXIV, Section 2408(c)(2) (relating to license issuance and inspections of temporary structures);
6. Article XXIV, Section 2410 (relating to temporary structures).

We overrule all other preliminary objections and deny all other relief sought in the petition for review.

We grant the cross-application for summary relief as to Counts II through V of the petition for review. We deny the cross-application as to Count I.

                                                      _____

                                                      ROBERT SIMPSON, Judge

Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Phantom Fireworks Showrooms, LLC,  :
Sky King Fireworks of Easton, Inc.,  :
Sky King Fireworks of Erie, Inc.,  :
Sky King Fireworks of Morrisville,  :
Inc., Sky King Fireworks of Tioga,  :
LLC, CRJ Enterprises, LLC,  :
                    Petitioners  :
  :
       v.  :  No. 21 M.D. 2018
  :
Tom Wolf, Governor of the  :
Commonwealth of Pennsylvania,  :
Russell C. Redding, Secretary of the  :
Pennsylvania Department of  :
Agriculture, C. Daniel  :
Hassel, Secretary of the Pennsylvania  :
Department of Revenue, Joseph B.  :
Scarnati, III, Pro Tempore of the  :
Senate of Pennsylvania, Mike Turzai,  :
Speaker of the Pennsylvania House of  :
Representatives,  :
                    Respondents  :

# O R D E R

**AND NOW**, this 4th day of December, 2018, upon consideration of the preliminary objections filed by all Respondents, the preliminary objection of Governor Wolf asserting improper joinder is **SUSTAINED** and Governor Wolf is dismissed as a party to this action. All other preliminary objections by all Respondents are **OVERRULED**.

Upon consideration of Petitioners' application for summary relief, the application is **GRANTED** as to Count I of the petition for review. The following

portions of Act 43 are declared unconstitutional as violative of Article II, Section 1 of the Pennsylvania Constitution, and their enforcement is hereby enjoined:

1. Article XXIV, Section 2401, definitions of "NFPA 1124" and "Temporary structure";

2. Article XXIV, Section 2407, first clause: "Except as provided in section 2410" (the main section relating to temporary structures);

3. Article XXIV, Section 2408(a)(1)(ii) (relating to application fees for temporary structures);

4. Article XXIV, Section 2408(b)(4) (relating to annual license fees for temporary structures);

5. Article XXIV, Section 2408(c)(2) (relating to license issuance and inspections of temporary structures);

6. Article XXIV, Section 2410 (relating to temporary structures).

Petitioners' application for summary relief is **DENIED** as to Counts II through V of the petition for review.

Senator Scarnati's cross-application for summary relief as to Counts II through V is **GRANTED** and those Counts are **DISMISSED**. The cross-application as to Count I is **DENIED**.

_____
ROBERT SIMPSON, Judge